**LAKE DURANGO WATER COMPANY, INC., Petitioner–Appellant/Cross–Appellee,**

v.

**The PUBLIC UTILITIES COMMISSION OF the STATE of COLORADO; and Raymond Gifford, Polly Page, and James Dyer, Commissioners thereof, individually named in their official capacity; Respondents–Appellees,**

and

**Durango West Metropolitan District No. 1., Respondent–Appellee/Cross–Appellant.**

No. 02SA100.

Supreme Court of Colorado, En Banc.

April 7, 2003.

As Modified on Denial of Rehearing April 28, 2003.

Jones & Keller, P.C., Edward T. Lyons, Jr., Alvin J. Meiklejohn, Jr., Denver, CO, Attorneys for Petitioner.

Ken Salazar, Attorney General, Anthony Marquez, First Assistant Attorney General, Paul C. Gomez, Assistant Attorney General, Denver, CO, Attorneys for Respondents Public Utilities Commission of the State of Colorado; Raymond Gifford, Polly Page, and James Dyer.

Hill & Robbins, P.C., Ronald L. Wilcox, Jennifer H. Hunt, Denver, CO, Attorneys for Respondent Durango West Metropolitan District No. 1.

Justice MARTINEZ delivered the Opinion of the Court.

## I. Introduction

This case is before this court for review of the district court's decision affirming an award by the Public Utilities Commission (PUC) of attorney's fees and costs to Durango West Metropolitan District No. 1 (the District) for expenses incurred during related proceedings between the District and Lake Durango Water Company (Lake Durango). Lake Durango challenges the award on three bases. First, Lake Durango argues on three bases. First, Lake Durango argues that the award is unconstitutional because it is both retrospective legislation and a taking. Second, Lake Durango asserts that recovery of attorney's fees and costs in this case is partially barred by a settlement agreement. Third, Lake Durango states that attorney's fees and costs should be partially barred due to ex parte communications between the PUC and the District. In addition, the District challenges the district court decision that interest in the award does not begin to accrue until the date of the district court judgment.

First, we find an award of attorney's fees by the PUC is not unconstitutional retrospective legislation barred by the Colorado Constitution, and is not an unconstitutional taking barred by the United States Constitution. Second, we conclude that the settlement agreement does not prevent recovery of attorney's fees and costs because Lake Durango breached and repudiated that agreement. Third, we determine that Lake Durango's argument that the PUC cannot grant attorney's fees due to ex parte communications is an impermissible collateral attack on a final order. Finally, because the date of the PUC order is equivalent to the date of entry of judgment in a trial court, interest on the award of attorney's fees begins to accrue on the date of the PUC order. Because we disagree with the challenges to the district court decision raised by Lake Durango, and we agree with the challenge to the district court decision raised by the District, we affirm in part and reverse in part.

## II. Facts and Procedural History

The District is an entity organized and operated under Colorado statute to provide water and sewer utility service and road maintenance for users within its boundaries. Lake Durango is a Colorado domestic, for-profit water company operating since 1984 to provide water to approximately 736 residential customers located west of Durango, Colorado. The District purchased water from Lake Durango to supply 181 households.

The District brought this case before the PUC in order to recover attorney's fees and costs incurred during three related proceedings before the PUC involving the District

and Lake Durango. Specifically, the District sought recovery of fees and costs incurred during: (1) Docket No. 95F–446W (the jurisdictional proceeding), in which the PUC determined that Lake Durango was a public utility subject to the jurisdiction, control, and regulation of the PUC; (2) Docket No. 97S–182W (the rate proceeding), in which the PUC established rates for Lake Durango; and (3) Docket No. 97A–273W (the CPCN proceeding), in which Lake Durango applied for a Certificate of Public Convenience and Necessity when Lake Durango sought to exclude the District from its service area.

### The Jurisdictional Proceeding

In September 1995, the District filed a complaint with the PUC after Lake Durango threatened to stop water service. During the resulting jurisdictional proceeding, the PUC found that Lake Durango satisfied the test for a public utility subject to PUC jurisdiction, control, and regulation. As part of that June 1996 decision, Lake Durango was ordered to file either tariffs or contracts with the PUC within sixty days.

### The Settlement Agreement

In August 1996, following the jurisdictional proceeding, Lake Durango and the District entered into a settlement agreement. The exact terms of the agreement were listed in a letter composed by the District dated August 16, 1996, which stated:

The proposal is as follows:

- The District will not seek recovery of its attorneys fees and costs incurred to date in the above docket (the jurisdictional case).
- The District will not object to the Company (Lake Durango) seeking and obtaining from the PUC an extension of time to December 31, 1996, to file its tariffs with the PUC, and will cooperate with the Company in obtaining such extension.
- The Company (Lake Durango) will not file exceptions or seek reconsideration of Decision No. R96–631 dated June 25, 1996, (the jurisdictional proceeding) other than, if deemed necessary or appropriate by the Company, to obtain an extension of time to December 31, 1996, to file its tariffs with the PUC.
- The Company will not seek judicial review of PUC Decision No. R96–631 dated June 25, 1996.

These terms were agreed to by Lake Durango in writing on August 27, 1996.

In conformity with the terms of the settlement agreement, Lake Durango did not file exceptions, seek reconsideration, or appeal the jurisdictional decision, but it applied for and received an extension to file its tariffs to December 31, 1996. However, on December 30, 1996, Lake Durango moved for an additional extension for filing tariffs, beyond the agreed upon December 31, 1996 date. This extension was granted by the PUC. In a letter dated January 14, 1997, the District notified Lake Durango that it regarded the motion and the additional delay as a breach of the settlement agreement, and that any further motions for delay would be vigorously opposed by the District. In response, Lake Durango stated that it did not breach the agreement because it was physically unprepared to file its tariffs. Furthermore, Lake Durango stated that it would not be filing tariffs at all since it planned to file an application to become a special water district outside the jurisdiction of the PUC.

### The Rate Proceeding

On April 14, 1997, nearly a year after the conclusion of the jurisdictional decision, Lake Durango finally filed tariffs with the PUC after failing to form a special water district. The tariff filing, which sought to increase rates 300 to 400 percent, prompted the District to move for a substitution of rates. This motion resulted in the rate proceeding, where the PUC held that Lake Durango's rate increase was excessive. During the rate proceeding Lake Durango was unable to provide reliable financial records. Without reliable financial records, the PUC was unable to identify proper rates based on Lake Durango's actual cost of service. Instead, the PUC adopted the rate structure proposed and supported by the District to be used on a temporary basis. Lake Durango did not appeal this PUC decision, nor did it file for new

rates by submitting company books and records.

### The CPCN Proceeding

In June 1997, Lake Durango applied for a certificate of public convenience and necessity seeking to exclude the District from its service area. After the District was allowed to intervene, Lake Durango moved to withdraw its CPCN application. This motion was granted on February 12, 1998.

### The Attorney's Fees Proceeding

On July 23, 1998, the District filed a motion requesting an award for attorney's fees and costs incurred during the three related underlying proceedings, the jurisdictional, the rate, and the CPCN proceedings. The PUC denied fees and costs for the CPCN proceeding because the District did not meet PUC standards for recovery of those fees. However, the PUC ultimately awarded $276,461.45 to the District for attorney's fees and other legal costs for the jurisdictional and the rate proceedings. Lake Durango sought review of the PUC's award of attorney's fees in the district court. In challenging the PUC award, Lake Durango cited both state and federal constitutional arguments, the settlement agreement entered into after the jurisdictional proceeding, and ex parte communications between the District and a PUC staff member occurring in October and November 1996, months prior to the rate proceeding, as reasons why attorney's fees should not be granted. On February 8, 2002, the district court affirmed the PUC decision. Lake Durango sought and obtained a stay by filing a bond in the form of a letter of credit. In establishing the bond, the district court held that interest on the award should begin to accrue from the date of the district court decision affirming the PUC order, not on the date of the PUC order.

### III. Analysis

We first determine whether the district court was correct in holding that the PUC did not err when it imposed an award of attorney's fees and costs. Specifically, we consider whether this award of attorney's fees and costs is unconstitutional either as a taking under the United States Constitution or as retrospective legislation barred by the State Constitution. Next, we examine whether this award is partially barred by a settlement agreement between the parties. We then review whether the award should be vacated due to ex parte communications between the District and a PUC staff member prior to the initiation of the rate proceeding. We hold that the award of attorney's fees and costs by the PUC is not unconstitutional retrospective legislation, but rather is a quasi-judicial act. Further, we conclude that this award is not an unconstitutional taking of Lake Durango's property, and it does not abrogate the settlement agreement between the parties because the contract was breached and repudiated by Lake Durango. Finally, we find that Lake Durango's argument that ex parte communications prevent an award of attorney's fees and costs is an impermissible collateral attack on a final judgment.

Additionally, in this case the District argues that interest accrues from the date of the PUC order awarding fees. We agree and hold that interest on the award accrues from the final date of the PUC order because the PUC order is equivalent to the final decision of a trial court, and the district court reviewed this case as an appellate body.

### A. Lake Durango's Constitutional Challenges

First, Lake Durango contends that awarding such fees constitutes retrospective legislation barred by the State Constitution. Second, Lake Durango alleges that the fee award violates the Takings Clause of the Fifth Amendment of the United States Constitution by taking Lake Durango's private property, its money and the right to use it, for public use without just compensation. We consider each argument independently.

1. *PUC award of attorney's fees and other legal costs does not constitute retrospective legislation.*

Lake Durango argues that the PUC's award of attorney's fees and other legal costs violates Colorado Constitution Ar-

ticle II, section 11, which prohibits retrospective legislation. Under section 11, legislation is retrospective and therefore prohibited if it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already passed." *Colo. Office of Consumer Counsel v. Pub. Serv. Co. of Colo.,* 877 P.2d 867, 870 (Colo.1994). Thus, for an act by the PUC to be retrospective legislation, it must: (1) be a legislative act; which (2) takes away or impairs a vested right belonging to Lake Durango; that (3) relates to a transaction already finalized. *Id.* Thus we must determine whether an award by the PUC of attorney's fees and costs to one party in regard to three completed proceedings is a retrospective legislative act. Although the award pertains to proceedings already completed, we determine that it is not a retrospective legislative act and therefore is not retrospective legislation. In addition, we note that the PUC award of attorney's fees does not take away or impair a vested right belonging to Lake Durango.

### a. *The award is not a legislative act*

■ This court has held that the PUC has the authority to award attorney's fees and costs. *Mountain States Tel. & Telegraph Co. v. Public Utils. Comm'n,* 195 Colo. 130, 576 P.2d 544, 547 (1978) (*Mountain States II*). This authority emanates from Article XXV of the Colorado Constitution. Colo. Const. art. XXV.; *Mountain States II,* 576 P.2d at 547. The power to authorize the award of attorney's fees and other legal costs in cases tried before administrative bodies is generally accepted as a fundamental legislative prerogative. *Mountain States II,* 576 P.2d at 547. Under the Colorado Constitution, the legislative authority in public utility matters has been delegated to the PUC and the legislature has not by any statutory enactment restricted it in the matter of awarding attorney's fees and other legal costs. *Id.*

■ In the area of utility regulation, including rate making, the PUC has broad based authority to do whatever it deems necessary or convenient to accomplish the legislative functions delegated to it. *Id.* Awarding attorney's fees and costs in cases that come before it is one way the PUC strives to fulfill its legislative function of regulating public utilities.

When the PUC acts to award fees it is functioning in a quasi-judicial manner pursuant to legislative authority granted to it. We have held that if a governmental decision is likely to adversely affect the protected interests of specific individuals, and if the decision is to be reached through the application of pre-existing legal standards or policy considerations to present or past facts presented to the governmental body, that body is acting in a quasi-judicial capacity in making its determination. *Cherry Hills Resort Dev. Co. v. Cherry Hills Village,* 757 P.2d 622, 627 (Colo. 1988).

■ In the case before us, the PUC, acting pursuant to the legislative authority granted to it by the Colorado Constitution, applied standards that were adopted by the PUC for awarding fees and costs, and were found appropriate by this court in *Mountain States II. Mountain States II,* 576 P.2d 544. These standards were applied to the facts presented to the PUC by the parties, and from this application the PUC decided to award attorney's fees and other legal costs to the District. Hence, because the fee award is a quasi-judicial act and not legislation, it is not subject to the section 11 prohibition against retrospective legislation.

An award of attorney's fees is determined after the merits portion of a case is resolved. If we were to hold that an award of attorney's fees by the PUC constituted a legislative act, PUC awards of attorney's fees would always be retrospective legislation, and thus always violate the state constitutional prohibition against retrospective legislation. Instead, in *Mountain States II,* we expressly recognized the ability of the PUC to award attorney's fees and costs. *Id.* at 547.

### b. *The award does not impact or take away a vested right*

■ Lake Durango claims a vested right in the finality of the jurisdictional and rate

proceedings, and argues that the award proceeding granting attorney's fees disturbs this finality. We disagree. We have previously held that attorney's fees proceedings are separate and distinct from the merits portion of a case and do not impact the finality of a decision. *Baldwin v. Bright Mortgage Co.,* 757 P.2d 1072, 1074 (Colo.1988). The awarding of attorney's fees will not disturb any rights a party may have in the outcome of a prior proceeding.

2. *The PUC award of attorney's fees and costs is not an unconstitutional taking of Lake Durango's property.*

 Lake Durango argues that the award of attorney's fees and costs constituted an unconstitutional taking of Lake Durango's money and the right to use it. Under the Takings Clause of the Fifth Amendment to the United States Constitution, private property shall not be taken for public use, without just compensation. *Eastern Enterprises v. Apfel,* 524 U.S. 498, 522, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998). Additionally, Article II, section 15 of the Colorado Constitution states that "private property shall not be taken or damaged, for public or private use, without just compensation." Colo. Const. art. II, § 15. However, not every injury to private property is an unconstitutional taking. *Eastern,* 524 U.S. at 523, 118 S.Ct. 2131. In resolving a "taking" issue, one must evaluate the "justice and fairness" of the governmental action. *Id.* While there is no set formula as to how this evaluation is to be made, the United States Supreme Court has identified certain factors that are particularly significant. *Id.* Specifically, the character of the governmental action, its economic impact, and its interference with reasonable economic expectations of the property owner. *Id.* at 523–24, 118 S.Ct. 2131; *Kirk v. Denver Publ'g Co.,* 818 P.2d 262, 268 (Colo.1991).

Lake Durango argues that the award of attorney's fees and costs in this case is an unconstitutional taking of private money because the nature of the governmental act is retrospective legislation, the economic impact of the award is unreasonable and would devastate the business, and because the award frustrates Lake Durango's reasonable economic expectations by imposing too heavy a financial burden on a business unprepared to protect itself.

 The PUC award is not an unconstitutional taking of property from Lake Durango. First, the nature of the award was not that of a legislative act imposing severe retroactive liability. Second, the award of attorney's fees and costs did not have an unreasonable economic impact on Lake Durango. The liability imposed was not disproportionate to the parties' experience. Both the PUC and the reviewing district court found the amount of fees and costs awarded to the District to be directly proportionate to Lake Durango's own legal expenses accumulated during the proceedings before the PUC. Both parties incurred approximately the same amount of fees and other legal costs. Lastly, the award did not interfere with Lake Durango's economic expectations. Lake Durango could and did anticipate the liability, as demonstrated by both the terms of the settlement agreement and evidence submitted to the PUC showing that Lake Durango understood that an award of attorney's fees against them was at least possible. Thus, no constitutional taking has occurred.

B. *Settlement agreement does not bar recovery of attorney's fees and costs for the jurisdictional proceeding*

Lake Durango argues that the PUC and the district court improperly determined that it had breached and repudiated the terms of an otherwise enforceable settlement agreement between the parties. This determination was improper, argues Lake Durango, because the PUC misinterpreted the plain meaning of the agreement. Instead, Lake Durango argues that true terms of the agreement should be upheld, and that the District should be barred from recovery of fees and costs for the jurisdictional proceeding. In analyzing this assertion, we first consider the terms of the agreement, and then consider whether Lake Durango breached or repudiated the agreement.

1. *The terms of the settlement agreement*

Lake Durango and the District disagree whether the settlement agreement required

Lake Durango to file tariffs with the PUC within a specific time period. According to Lake Durango, the District agreed not to seek attorney's fees for the jurisdictional proceeding, and not to object to an application for extension of time to December 31, 1996, for Lake Durango to file tariffs with the PUC. In exchange, Lake Durango agreed not to file exceptions or seek PUC reconsideration of the jurisdictional proceeding, and not to appeal the jurisdictional proceeding decision to the district court. Lake Durango now argues that because it did not file exceptions to or seek judicial review of the jurisdictional proceeding, it is entitled to specific performance of the agreement. Specifically, the District should not be allowed to seek attorney's fees and costs for the jurisdictional proceeding.

In contrast, the District argues that under the terms of the agreement, Lake Durango was required to file tariffs with the PUC by December 31, 1996. According to the District, the settlement agreement was based on the order of the PUC that Lake Durango file tariffs or contracts with the PUC within sixty days of the effective date of the decision in the jurisdictional proceeding. Under the contract, the District argues, the District would not oppose Lake Durango seeking an extension of the time within which Lake Durango was obligated to file tariffs with the PUC, and the District would not seek attorney's fees and costs incurred during the jurisdictional proceeding. In exchange, Lake Durango would not appeal the proceeding or file exceptions with the PUC or seek reconsideration of the proceeding.

■■■■ Whether a written contract is ambiguous and, if not deemed ambiguous, how the unambiguous contractual language should be construed, are questions of law that we review de novo. *Kaiser v. Market Square Discount Liquors,* 992 P.2d 636, 640 (Colo.App.1999). We need not defer to another court's construction of contractual language, nor to its finding that such language is unambiguous. *Dorman v. Petrol Aspen, Inc.,* 914 P.2d 909, 912 (Colo.1996). In determining whether a provision in a contract is ambiguous, the instrument's language must be examined and construed in harmony with the plain and generally accepted meanings of the words used, and reference must be made to all the agreement's provisions. *Fibreglas Fabricators, Inc. v. Kylberg,* 799 P.2d 371, 374 (Colo.1990). When a contract is unambiguous, the court must, in the absence of a showing that the contract is voidable on grounds such as mistake, fraud, duress, undue influence, or the like, or unless the result would be an absurdity, give effect to the contract as written. R. Lord, Williston on Contracts, Interpretation and Construction § 30:6 (4th ed.1999); *see also, Kaiser,* 992 P.2d at 640 (citing *USI Properties East, Inc. v. Simpson,* 938 P.2d 168 (Colo.1997) (when construing an unambiguous contract, the court may not rewrite its terms but must instead enforce it as written)). The intention of the parties must appear expressly or by clear implication. *Charles Ilfeld Co. v. Taylor,* 156 Colo. 204, 397 P.2d 748, 750 (1964).

■■■■ The settlement agreement in this case is not open to more than one interpretation, and therefore is not ambiguous. In the jurisdictional proceeding occurring prior to the creation of this settlement agreement, the PUC ordered Lake Durango to file tariffs with the PUC. There are two separate references in the agreement to the requirement that Lake Durango file tariffs. First, the District agreed not to object to Lake Durango seeking and obtaining an extension of time to December 31, 1996, in which to file its tariffs with the PUC. Second, Lake Durango agreed that unless it was necessary to obtain an extension of time to December 31, 1996, in which to file its tariffs, Lake Durango would not file exceptions or seek PUC reconsideration of the decision in the jurisdictional proceeding, which required it to file tariffs or contracts with the PUC.

Lake Durango argues that none of this language obligates it to actually file tariffs at all as part of the settlement agreement, regardless of the prior PUC order to do so. However, the plain language of the contract identifies the behavior of each party in relation to when Lake Durango files its tariffs. Therefore it is not necessary that the agreement specifically state that the tariffs must be filed because such clearly implies that the tariffs must be filed.

The language of the agreement does not say "if" Lake Durango files tariffs, the District may not object to an application for an extension of time in which to do so. Rather, the District agreed not to object to an extension of time up to December 31, 1996, within which Lake Durango will file tariffs. Furthermore, the provision that the District would not object to the application for an extension of time for filing tariffs would be meaningless, and really no consideration at all on the part of the District, if it were not understood that Lake Durango would be filing tariffs with the PUC. Therefore, the PUC was correct in identifying as part of the terms of the agreement that Lake Durango would file tariffs with the PUC before December 31, 1996.

### 2. *Breach and repudiation occurred*

■■■■ Once the terms of the agreement have been identified, the fact finder must determine whether the party accused of breaching has performed its obligations under the contract. Whether a party has performed its obligations under a contract or breached is a question of fact. *Little Thompson Water Ass'n v. Strawn*, 171 Colo. 295, 466 P.2d 915, 917 (1970). Furthermore, whether a breach of a contract is material and therefore excuses further performance by either party is also a question of fact. *Kaiser*, 992 P.2d at 640 (Colo.App.1999).

The PUC determined that Lake Durango did in fact breach the settlement agreement because it failed to timely file the tariffs. Further, the PUC also held that Lake Durango could not rely on the agreement because it repudiated the agreement by informing the District that it would not be filing tariffs at all. This decision was affirmed by the district court. The findings and conclusions of the PUC on disputed questions of fact are final and are not subject to review unless challenged on constitutional grounds. § 40–6–15(2), 11 C.R.S. (2002).

The PUC determined that Lake Durango materially breached the contract not only by seeking another extension of time beyond the December 31, 1996, deadline, but also by filing the tariffs beyond the December 31, 1996, deadline. This determination is final and not subject to review. Therefore, we affirm the PUC decision that Lake Durango materially breached the settlement agreement and is thus not entitled to enforcement of its provisions.

Lake Durango responded to allegations by the District that Lake Durango had breached the contract, stating that it had not breached since it was physically unable to perform. This claim is undermined by Lake Durango's repudiation of the terms of the contract.

■■■■ A repudiation of a contract must consist of a present, positive, unequivocal refusal to perform the contract, not a mere threat to abandon its obligations under the contract. *Meinhardt v. Inv. Builders Props. Co.*, 518 P.2d 1376, 1379 (Colo.App.1973). Lake Durango repudiated the contract. On January 14, 1997, the District notified Lake Durango that it considered Lake Durango's motion for an extension of time beyond the December 31st deadline to be a breach of the settlement agreement. Lake Durango responded that it did not consider the motion a breach of contract because it could not perform, but regardless of whether it was a breach or not, it would not ever file any tariffs with the PUC because it planned to become a special water district outside the jurisdiction of the PUC. As an unequivocal refusal to perform an essential element of the agreement, this statement constitutes repudiation by Lake Durango. We affirm the holding of the PUC that Lake Durango repudiated the settlement agreement. As a result, Lake Durango cannot enforce the provisions of the settlement agreement pertaining to awards of attorney's fees and costs.

### C. *Lake Durango is barred from collaterally challenging the rate proceeding.*

Lake Durango asserts that the method used by the PUC in the rate proceeding to set rates stemmed from allegedly improper ex parte communications between a staff member of the PUC and District representatives. Lake Durango contends that because these communications are prohibited under the Colorado Administrative Procedures Act (APA), the District should not be allowed to recover attorney's fees and costs incurred

during the rate proceeding. The District, in response, argues that the communications were not improper under Rule 9 adopted by the PUC, and that the PUC Rule supercedes APA Rules on this matter.

The proceeding before us for review is the award of attorney's fees and costs by the PUC, not the rate proceeding. Lake Durango did not appeal the rate proceeding. Because Lake Durango did not learn of the ex parte communication while the rate proceeding was pending, it did not raise the issue of ex parte communications during that proceeding. Therefore, the decision of the PUC in the rate proceeding is a final order. Accordingly, Lake Durango's argument in this attorney's fees proceeding is a collateral attack on a final decision.

▄▄▄ Unless an application for review of the acts of the PUC is filed with the district court before the expiration of thirty days from the date of the PUC final decision, judicial review is barred. § 40–6–115(1), 11 C.R.S. (2002); see *Archibold v. Public Utils. Comm'n*, 933 P.2d 1323, 1323 (Colo.1997). In all collateral actions or proceedings, the decisions of the PUC that have become final shall be conclusive. § 40–6–112(2), 11 C.R.S. (2002). However, the PUC may rescind, alter, or amend any decision after proper notice and opportunity to be heard. § 40–6–115(1), 11 C.R.S. (2002).

Lake Durango did file a motion to set aside the rate proceeding. The PUC denied Lake Durango's motion to set aside the rate proceeding, in the same order in which it addressed attorney's fees, finding that Lake Durango failed to support its allegations. In requesting the district court to review the attorney's fees decision of the PUC, Lake Durango was unclear whether it was also seeking review of the denial of its motion to set aside the rate proceeding. The district court did not regard the petition for review as addressing the PUC denial of the motion to set aside the rate proceeding. Lake Durango has not argued that the district court misconstrued the petition for review. Nor has Lake Durango argued here that whether the decision in the rate proceeding should have been set aside is an issue before us. [1]

Since the PUC decision in the rate proceeding is final and Lake Durango's claim is an impermissible collateral attack, we will not address Lake Durango's argument that the PUC and the District engaged in improper ex parte communications. A final judgment entered with proper jurisdiction is not subject to collateral attack. *Closed Basin Landowners Ass'n v. Rio Grande Water Conservation Dist.*, 734 P.2d 627, 637 (Colo.1987).

### D. Interest accrues from date of finality of PUC order

The District asks this court to reverse the district court by granting post-judgment interest on the award of attorney's fees and costs from the date of the PUC award, instead of from the date of judgment of the district court. If a judgment for money is appealed by a judgment debtor and the judgment is affirmed, interest shall be payable from the date of entry of judgment in the trial court until satisfaction of the judgment. § 5–12–106(1)(b), 2 C.R.S. (2002). Because the PUC order is equivalent to a judgment by a trial court, interest on the award accrues from the date of entry of the PUC order, not the judgment of the district court.

▄▄▄ The PUC order is equivalent to a trial court decision, and in reviewing a PUC order, the district court acts as an appellate body. The findings and conclusions of the PUC on disputed questions of fact are considered final. § 40–6–115(2), 11 C.R.S. (2002). Upon review, the district court enters judgment either affirming, setting aside, or modifying the decision of the PUC. § 40–6–115(3). The review shall not extend further than to determine whether the PUC has regularly pursued its authority, whether the decision violates constitutional rights of the petitioner, and whether the decision is just and reasonable in accordance with the evidence. *Id.* When there is competent evidence to support the findings of the PUC, the reviewing district court may not substitute its judgment for that of the PUC. *Public Serv. Co. v. Public Utils. Comm'n*, 26 P.3d 1198, 1205 (Colo.2001).

---

**1.** In addition, Lake Durango asserts in a petition for rehearing before us that it "is not asking this court to vacate the decision in the 1997 rate case ..."

Therefore, because the PUC order is equivalent to a trial court decision with the district court reviewing as an appellate body, interest is payable from the date of entry of the PUC order until satisfaction of the judgment.

### IV. Conclusion

We hold that the district court correctly affirmed the PUC award of attorney's fees and costs, but incorrectly determined when interest begins to accrue. In awarding attorney's fees and costs, the PUC did not engage in unconstitutional retrospective legislation or an unconstitutional taking. Furthermore, the PUC did not nullify an otherwise valid settlement agreement in awarding attorney's fees in this case. Breach and repudiation by Lake Durango prevent any enforcement of this agreement. Additionally, allegations of illegal ex parte proceedings cannot be used here to collaterally attack the fees award because the issue should have been raised by Lake Durango in a different proceeding. Finally, interest on the award accrues from the date of the PUC order, not from the date of the district court decision. Thus, the judgment of the district court is affirmed in part and reversed in part. Further, the case is remanded to the district court with directions to correct its judgment on the interest due on the award of attorney's fees and costs.