**Steve RINGQUIST and Diana Ringquist, Plaintiffs–Appellees,**

v.

**WALL CUSTOM HOMES, LLC, David Carter Wall, and William Winston Wall, Defendants–Appellants.**

**No. 06CA2256.**

Colorado Court of Appeals, Div. V.

Dec. 27, 2007.

Bennington Johnson Biermann & Craigmile, LLC, Tami L. Sapp, Denver, CO, for Plaintiffs–Appellees.

Lawlis & Bruce, LLC, Robert J. Bruce, Delphine L. Farr, Denver, CO, for Defendants–Appellants.

Opinion by Judge GRAHAM.

Defendants, Wall Custom Homes, LLC, David Cater Wall, and William Winston Wall (collectively, Wall Custom Homes), appeal from the trial court's entry of summary judgment in favor of plaintiffs, Steve Ringquist and Diana Ringquist. We affirm and remand for an award of attorney fees and costs.

In 1999, the Ringquists purchased a home (the residence) built by Wall Custom Homes. In 2004, the Ringquists filed an action against Wall Custom Homes for damages arising out of construction defects in that residence. The parties thereafter entered into a settlement agreement, which provided in relevant part:

1. Sale of the Residence.

a. Purchase Price. Wall Custom Homes agrees to pay the Ringquists the sum of:

i. Five Hundred Thirty Thousand Dollars to be paid at the Closing ...; and

ii. Fifty Percent of any gross sale proceeds in excess of Five Hundred Thirty Thousand Dollars, received by Wall Custom Homes upon resale of the Residence, to be paid within thirty days following such sale.

Pursuant to the settlement agreement, Wall Custom Homes purchased the residence from the Ringquists for the purchase price of $530,000. Wall Custom Homes then resold the residence to a third party for the purchase price of $599,000. At the closing, Wall Custom Homes issued a $65,000 check to the purchaser for necessary grading, drainage, and other repairs to the residence.

When Wall Custom Homes refused to pay the Ringquists $34,500, which the Ringquists asserted was 50% of the gross sale proceeds of the residence in excess of $530,000 (50% of ($599,000 minus $530,000)), the Ringquists brought an action for breach of the settlement agreement. Upon cross-motions for summary judgment, the trial court concluded:

13. In this case, the Settlement Agreement clearly states [Wall Custom Homes] agreed to pay the [Ringquists] "Fifty percent of any gross sale proceeds in excess of Five Hundred and Thirty Thousand Dollars.["] The term "gross" is generally accepted to mean the overall total exclusive of deductions, whereas the term "net" is generally accepted to mean the total amount remaining after deductions, as for charges or expenses.

14. Since the Settlement Agreement clearly states the terms in "gross sale proceeds" as opposed to "net sale proceeds," and the Settlement Agreement does [not] provide for the calculation of "gross sale proceeds," the Court must give meaning to the generally accepted meaning of "gross sale proceeds." The Court finds that the credit [Wall Custom Homes] gave to the purchaser of the residence should not be deducted from [the] amount required to pay [the Ringquists]. Thus, [the

Ringquists] are entitled to ... 50% of $69,000, which is $34,500.

This appeal followed.

## I. Standard of Review

■ Summary judgment is appropriate when the pleadings and supporting documentation demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *W. Elk Ranch, L.L.C. v. United States,* 65 P.3d 479, 481 (Colo.2002). We review the grant of a summary judgment motion de novo. *Id.*

■ The moving party has the initial burden to show that there is no genuine issue of material fact. *Cont'l Air Lines, Inc. v. Keenan,* 731 P.2d 708, 712 (Colo.1987). The nonmoving party is then required to establish that there is a triable issue of fact. *Id.* at 713. The nonmoving party is entitled to the benefit of all favorable inferences reasonably drawn from the facts, and all doubts must be resolved against the moving party. *Brodeur v. Am. Home Assurance Co.,* 169 P.3d 139, 146 (Colo.2007); *Clementi v. Nationwide Mut. Fire Ins. Co.,* 16 P.3d 223, 225–26 (Colo.2001).

## II. "Gross Sale Proceeds"

Wall Custom Homes contends that the trial court erred in concluding that the "gross sale proceeds" are the purchase price of the residence ($599,000), without any deduction for the $65,000 check issued by Wall Custom Homes to the purchaser at closing. Specifically, Wall Custom Homes argues that the "gross sale proceeds" of the residence are $534,000, which amount is calculated by deducting $65,000 (the check issued by Wall Custom Homes to the purchaser at closing) from the purchase price of $599,000, because the payment of $65,000 was essentially a cost of the sale. We disagree.

■ The interpretation of a settlement agreement, like any contract, is a question of law that we review de novo. *Bumbal v. Smith,* 165 P.3d 844, 845 (Colo.App.2007). Hence, we need not defer to the trial court's construction of contractual language, nor to its finding that such language is unambiguous. *Lake Durango Water Co. v. Pub. Utils. Comm'n,* 67 P.3d 12, 20 (Colo.2003); *Dorman v. Petrol Aspen, Inc.,* 914 P.2d 909, 912 (Colo. 1996). Nonetheless, we agree with the trial court's conclusion here.

■ In determining whether a provision in a contract is ambiguous, the instrument's language must be examined and construed in harmony with the plain and generally accepted meanings of the words used, and reference must be made to all the agreement's provisions. *Lake Durango Water Co.,* 67 P.3d at 20; *Fibreglas Fabricators, Inc. v. Kylberg,* 799 P.2d 371, 374 (Colo.1990). When a contract is unambiguous, the court must give effect to the contract as written, unless the contract is voidable on grounds such as mistake, fraud, duress, undue influence, or the like, or unless the result would be an absurdity. *Lake Durango Water Co.,* 67 P.3d at 20.

■ The fact that the parties disagree about the meaning of a term does not make that term ambiguous. *See Cohen v. Empire Cas. Co.,* 771 P.2d 29, 31 (Colo.App.1989). Similarly, the mere fact that the parties attach a different, subjective meaning to a contract does not of itself create an ambiguity. *See Lee v. BSB Greenwich Mortgage Ltd. P'ship,* 267 F.3d 172, 178 (2d Cir.2001); *Moore v. Kopel,* 237 A.D.2d 124, 653 N.Y.S.2d 927, 929 (N.Y.App.Div.1997).

■ Here, the term "gross sale proceeds" is not defined in the settlement agreement. However, the absence of an explicit definition of "gross sale proceeds" does not by itself render that term ambiguous. *See White v. Indus. Claim Appeals Office,* 8 P.3d 621, 625 (Colo.App.2000) (concluding that because the term "recreational" is capable of a reasonable and practical construction based upon its plain meaning, the lack of a definition of the term does not create ambiguity as to the type of activity intended to be excluded from employment under that term). Rather, when a contract term is undefined, a court should look to the plain meaning of the language to ascertain whether there is ambiguity. *See Enright v. City of Colorado Springs,* 716 P.2d 148, 149 (Colo.App.1985) (where a term is not defined by the statute,

courts must assume that the General Assembly intended that the phrase be given its usual and ordinary meaning).

▮ We hold that the term "gross sale proceeds" in the settlement agreement is unambiguous. It is clear that the "gross sale proceeds" are the receipts from the sale of the residence ($599,000), without any deductions. *See Lee,* 267 F.3d at 179. "Gross" is defined as "an overall total exclusive of deductions (as taxes, expenses)." *Webster's Third New International Dictionary* 1002 (1986). "Gross sales" is defined as "[t]otal sales (esp. in retail) before deductions for returns and allowances." *Black's Law Dictionary* 1365 (8th ed.2004). "Proceeds" is defined as "the amount of money received from a sale." *Id.* at 1242. The term "gross proceeds" is defined as "[t]he entire proceeds[;][t]he proceeds of a sale or of a collection without deduction for cost, commissions, or any other expenses whatsoever." *Ballentine's Law Dictionary* 537 (3d ed.1969). In contrast, the term "net proceeds" is defined as "[t]he amount received in a transaction minus the costs of the transaction (such as expenses and commissions)." *Black's Law Dictionary* 1242.

Here, any reasonable reading of "gross sale proceeds" must exclude the $65,000 check issued by Wall Custom Homes to the purchaser of the residence. Only "net sales proceeds," a term available to the parties which they did not use, could refer to the purchase price of the residence minus any money Wall Custom Homes paid to the purchaser. Wall Custom Homes has provided no reason to conclude that the customs, practices, usages, and terminology as generally understood in the home building industry call for a different interpretation of "gross sale proceeds." *See Allstate Ins. Co. v. Parfrey,* 830 P.2d 905, 912 (Colo.1992).

Wall Custom Homes cites several cases holding that "gross proceeds" are calculated by deducting certain costs. *See Huddleston v. Grand County Bd. of Equalization,* 913 P.2d 15, 21 (Colo.1996) (the gross proceeds of the ore are determined by deducting all costs of treatment, reduction, transportation, and sale of the ore); *Paxson v. Cresson Consol. Gold Mining & Milling Co.,* 56 Colo. 206, 211, 139 P. 531, 532 (1914) (same); *see also Tivolino Teller House, Inc. v. Fagan,* 926 P.2d 1208, 1210–11 (Colo.1996) (the Limited Gaming Amendment, Colo. Const. art. XVIII, § 9(4)(a), defines "adjusted gross proceeds" as "the total amount of all wagers made by players on limited gaming less all payments to players"); *cf. Rogers v. Westerman Farm Co.,* 29 P.3d 887, 897 (Colo.2001) (declining to adopt other jurisdictions' interpretation of the phrase "gross proceeds at the well" to mean that royalties are to be calculated based on sales price minus post-production costs); *Mittelstaedt v. Santa Fe Minerals, Inc.,* 954 P.2d 1203, 1206 (Okla.1998) (plain meaning of "gross proceeds" suggests payment to lessor is without deductions). However, these cases discuss the calculation of "gross proceeds" in specific industries and businesses, such as the oil and gas industry and the gaming industry, and are therefore inapplicable here.

That the parties may not have contemplated that Wall Custom Homes would pay an allowance to the purchaser of the residence is irrelevant, as a court has no right to add a new term to a contract. *See Fountain v. Mojo,* 687 P.2d 496, 499 (Colo.App.1984) (because the contract did not provide that the plaintiffs' loan approvals had to be unconditional, the division declined to rewrite the contract to add this term). The fact that in retrospect the agreement was not ideal for Wall Custom Homes cannot lead us to find ambiguity where none exists.

We note that the sales transaction could have been structured by including the allowance as a credit against the cost of the residence and accounting for it on the closing documents. Had the transaction been structured in that way, the purchaser would have been required to pay a smaller amount for the home and the gross proceeds of sale would have been reduced by $65,000. However the structure used here involved an outright sale for the sum of $599,000 and a side payment of $65,000, allowing the purchaser to receive cash at closing for use in the landscaping and repair of the property. Thus, it is clear that the gross proceeds of sale amounted to the higher, financed

amount as disclosed on the closing documents.

### III. Attorney Fees and Costs

■ Pursuant to the settlement agreement, the Ringquists, as the prevailing party, are entitled to an award of attorney fees and costs, including fees and costs incurred in this appeal. *See Brock v. Weidner*, 93 P.3d 576, 580 (Colo.App.2004). We leave the determination of the amount of the attorney fees to the trial court on remand. C.A.R. 39.5; *In re Marriage of Ikeler*, 161 P.3d 663, 671 (Colo.2007).

The judgment is affirmed, and the case is remanded for determination of attorney fees and costs, including fees and costs incurred in this appeal.

Judge LOEB and Judge ROMÁN concur.