23CA1517 Marriage of Heil 02-27-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1517
Jefferson County District Court No. 11DR199
Honorable Jason Carrithers, Judge

---

In re the Marriage of

Greggory Steuart Heil,

Appellee,

and

Carolynn Lynn O'Rourke,

Appellant.

---

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE LUM
Fox and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 27, 2025

---

Haddon, Morgan and Foreman, P.C., Adam Mueller, Denver, Colorado, for
Appellee

Aitken Law, LLC, Sharlene J. Aitken, Denver, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    Carolynn Lynn O'Rourke (wife), formerly married to Greggory Steuart Heil (husband), appeals the district court's judgment granting husband's post-decree motion for declaratory judgment and denying her motion to reconsider.  We affirm.

## I.    Background

¶ 2    Husband and wife married in 2003.  Before the dissolution of their marriage, husband founded Encoding.com, a cloud-based media storage and processing company.  During the dissolution proceedings, the parties entered into a separation agreement that provided for the division of their marital property, including husband's shares of Encoding.com.  The provision dividing the value of husband's Encoding.com shares (encoding provision) reads as follows:

> With regard to Encoding.com, Husband agrees to transfer to Wife the cash equivalent of the value of one half of his interest in the shares of Encoding.com which vested as of May 1, 2011, when those shares are subject to liquidation.  The husband agrees to pay the wife the cash equivalent of 50% of his Encoding.com stock options which vested May 1, 2011.  The cash equivalent to be paid be [sic] will be determined by taking the market value for the stock on the day of determination times the number of options due the wife reduced by the cost of the options and the estimated taxes

1

that would have been incurred if the options had been exercised and sold on the day of determination. Specifically, Husband agrees to either: (1) transfer to Wife one-half of the net cash proceeds from each block of shares sold, repurchased and/or liquidated of his interest in the shares of Encoding.com which vested as of May 1, 2011, when those shares are subject to sale, repurchase and/or liquidation, ["Option 1"] (2) transfer to Wife the cash equivalent of the value as of May 1, 2011 of each block of shares of one-half of his interest in the shares of Encoding.com which vested as of May 1, 2011, if such shares are converted into any other type of security of any nature in the Company (including any transfer or conversion of shares made pursuant to a statutory merger or statutory consolidation of the Company with or into another corporation(s)/entity(ies)) when those shares are converted and subject to liquidation ["Option 2"], or (3) Husband agrees to hold for Wife at her option if possible and allowable, one-half of the shares of Encoding.com which vested as of May 1, 2011, if the Wife elects to sell, repurchase and/or liquidate each block of shares at a different time period or at a different price per share then [sic] Husband's timing and sales price point ["Option 3"]. Husband shall not transfer, assign, gift, trade, exchange, etc. any share/s that does not result in the Wife receiving one-half of the net cash equivalent or value of each block of shares awarded to her under this Separation Agreement that are vested as of May 1, 2011.

¶ 3    As of May 1, 2011, husband had 2,132,612 vested shares. According to a valuation report performed for the company, the shares were worth $0.163 each on that date.[1]

¶ 4    The decree of dissolution of marriage was entered in September 2011.  In May 2022, Encoding.com merged with another company.  Husband emailed wife his understanding that the merger triggered his duty to pay her the value of her half of the shares under Option 2 of the encoding provision.  However, disputes arose between the parties about, as relevant here, the amount of the payment.  Specifically, the parties disputed the date as of which the shares would be valued.  Husband contended that the valuation date was May 1, 2011.  Wife contended that the shares should be valued as of the date of the merger, at which time they were worth far more.  Both parties' arguments were based on the language of the encoding provision.

¶ 5    Eventually, husband filed a motion for declaratory judgment seeking a declaration from the court that wife was entitled to

---

[1] The valuation report values the shares at $0.163 as of April 30, 2011.  However, both parties treat this value as the May 1, 2011, value.

$128,724.46 — an amount he reached by multiplying 1,066,306 (the number of shares due to wife) by $0.16 (the value of the shares as of May 1, 2011) and subtracting applicable taxes.

¶ 6    The district court largely granted husband's motion, concluding that wife was entitled to $131,138.05.[2]  The court concluded that the separation agreement was "ambiguous but not indecipherable as to the amount owed to [wife]."  It elaborated that the "preliminary sentences of [the encoding provision] discussing the 'date of determination' are readily harmonizable with the plain language of Option 2," and that, under the applicable language, the "'date of determination' is May 1, 2011."

¶ 7    Wife filed a motion to reconsider, arguing that because the district court had determined that the separation agreement was ambiguous, an evidentiary hearing was required to determine the parties' intent based on extrinsic evidence.  The district court denied the motion, explaining that while the "*individual* contractual provision in question was ambiguous . . . the ambiguity could be

---

[2] As best we can discern, the difference in husband's payoff number and the one reached by the court stems from husband's use of a "rounded down" value of $0.16 per share, while the court used the value of $0.163 per share as detailed in the valuation report.

resolved through review of the four corners of the Separation Agreement." It also concluded that wife had waived her right to request an evidentiary hearing by failing to request one in her response to husband's motion for declaratory judgment and by agreeing that the court could rule on the pleadings during a status conference.

¶ 8 Wife appeals.

## II. Interpretation of Encoding Provision

¶ 9 Wife contends that the district court erred by concluding that May 1, 2011, was the "day of determination" for Option 2. We disagree.

### A. Standard of Review and Applicable Law

¶ 10 We review a district court's decision to issue a declaratory judgment for abuse of discretion. *Nautilus Ins. Co. v. 8160 S. Mem'l Drive, LLC*, 436 F.3d 1197, 1199 (10th Cir. 2006); *Mendoza v. Pioneer Gen. Ins. Co.*, 2014 COA 29, ¶ 9.[3] However, we review the substance of the judgment as we would any other district court decision. *Nautilus*, 436 F.3d at 1199 n.1.

---

[3] Neither party contests the court's decision to enter a declaratory judgment.

¶ 11    Whether a written contract is ambiguous is a question of law that we review de novo. *Lake Durango Water Co. v. Pub. Utils. Comm'n*, 67 P.3d 12, 20 (Colo. 2003). We also review de novo the district court's interpretation of an unambiguous contract. *Ad Two, Inc. v. City & Cnty. of Denver*, 9 P.3d 373, 376 (Colo. 2000).

¶ 12    "The primary goal of contract interpretation is to determine and give effect to the intent of the parties." *Id.* We determine the parties' intent "primarily from the language of the instrument itself." *Id.* A contract that is unambiguous "will be enforced according to [its] plain language." *Id.* "In construing a contract, we interpret the contract in its entirety, seeking to harmonize and give effect to all of its provisions so that none will be rendered meaningless." *People ex rel. Rein v. Jacobs*, 2020 CO 50, ¶ 43.

¶ 13    The terms of a contract are ambiguous when they are "susceptible [of] more than one reasonable interpretation." *Ad Two*, 9 P.3d at 376. However, the mere fact that the parties disagree about the interpretation of the contract does not itself create ambiguity. *Id.* at 377.

## B. Analysis

¶ 14 While the encoding provision is certainly difficult to decipher, we conclude that the provision unambiguously says that May 1, 2011, is the appropriate valuation date for purposes of calculating wife's payout under Option 2. Accordingly, we affirm the district court's declaratory judgment in favor of husband.[4] *See Deutsche Bank Tr. Co. Ams. v. Samora*, 2013 COA 81, ¶ 38 ("An appellate court may affirm the trial court's ruling based on any grounds that are supported by the record.").

¶ 15 The encoding provision can be broken into two major sections. The first section initially describes *what* husband must transfer to wife: "the cash equivalent of the value of one half of his interest in the shares of Encoding.com which vested as of May 1, 2011." (For

---

[4] We observe that the district court's conclusions regarding ambiguity are somewhat conflicting. While the court said that the agreement was "ambiguous," it didn't appear to conclude that there was more than one reasonable interpretation of the day of determination in Option 2. Instead, it concluded that the day of determination was May 1, 2011, based on the agreement's plain language and explained that "the ambiguity could be resolved through review of the four corners" of the agreement. This suggests that the court actually concluded that the agreement was unambiguous. However, because we review de novo, *Lake Durango Water Co. v. Pub. Utils. Comm'n*, 67 P.3d 12, 20 (Colo. 2003), we need not reconcile these inconsistencies.

ease of reference, we will refer to "[husband's] interest in the shares of Encoding.com which vested as of May 1, 2011" as "the marital shares."). It also describes, as a general matter, *when* husband has to make the transfer: when the marital shares "are subject to liquidation." Finally, the first section describes how to calculate the cash equivalent:

> The cash equivalent to be paid . . . will be determined by taking the market value for the stock on the day of determination times the number of options due the wife reduced by the cost of the options and the estimated taxes that would have been incurred if the options had been exercised and sold on the day of determination.

The parties and the district court appear to agree (as do we) that "day of determination" refers to the day as of which the marital shares will be valued for the purpose of determining the cash equivalent due to wife.

¶ 16    The second section outlines three categories of liquidation events that trigger husband's duty to pay wife:

- Option 1: the sale, repurchase or liquidation of "each block" of marital shares;

- Option 2: the conversion of the shares to a different type of security, including "transfer or conversion . . . made pursuant to a statutory merger"; and

- Option 3: wife's election to sell, repurchase, or liquidate her shares at a different time and price point than husband.[5]

For purposes of this appeal, the parties agree that payment to wife is governed by Option 2.

¶ 17    The encoding provision doesn't define "day of determination," indicating that it may vary depending on which payment option is triggered.  As relevant here, Option 2 specifies, "Husband agrees to . . . transfer to Wife the *cash equivalent of the value as of May 1, 2011 . . .* of one-half of [the marital shares]."  (Emphasis added.)  When read in conjunction with the first section of the encoding provision, this language unambiguously says that when payment to wife is made under Option 2, the day of determination — the day as of which the shares are valued — is May 1, 2011.  This

---

[5] From the language of the encoding provision, it appears that the third triggering event could only occur if it was permissible for husband to treat wife's half of the options differently than his half.

interpretation harmonizes the definition of "cash equivalent" in the first section of the provision with the specific valuation date provided in Option 2 and gives effect to both sections. *See Rein*, ¶ 43.

¶ 18 Nevertheless, wife broadly contends that the day of determination should be interpreted to be the date of the merger rather than May 1, 2011. We disagree.

¶ 19 The fundamental problem with wife's argument is that it reads out of the agreement Option 2's clear directive that husband transfer the cash equivalent of the "value as of May 1, 2011." *See Rein*, ¶ 43 (noting that courts must construe contracts to give effect to all provisions). To the extent wife attempts to give effect to that language by arguing that "cash equivalent of the value as of May 1, 2011," refers to the vest date of the shares rather than the valuation date, we disagree. Option 2 contains two references to "May 1, 2011." The first refers to the "value as of May 1, 2011." The second refers to the shares that "vested as of May 1, 2011." Wife's construction (1) changes the language "value as of" to "vested as of" and (2) renders superfluous Option 2's reference to the "vested" shares, both of which are impermissible. *See id.*; *see also*

10

*Radiology Pro. Corp. v. Trinidad Area Health Ass'n*, 577 P.2d 748, 751 (Colo. 1978) ("Courts possess no authority to rewrite contracts . . . .").

¶ 20    Wife also contends that other parts of the encoding provision compel a conclusion that the day of determination for Option 2 *cannot be* May 1, 2011.  If this were true, then the encoding provision would be irreconcilably inconsistent, and thus, ambiguous.  *People v. Johnson*, 618 P.2d 262, 266 (Colo. 1980) (noting that conflicting contractual clauses indicate an ambiguity that may be resolved by resort to extrinsic evidence to determine the parties' intent).  We therefore consider, and reject, each of wife's arguments in turn.

¶ 21    Wife first argues that the part of the encoding provision defining the calculation for the cash equivalent entitles her to exactly half of husband's total payout from any liquidation event. We disagree because we see nothing in the plain language to support such a conclusion.  True, the parties' payouts would be equal *if* the day of determination were the same day as the liquidation event, but nothing in the language mandates an equal payout.

¶ 22    Next, wife argues that if the parties had intended May 1, 2011, to be the day of determination for Option 2, they would have simply inserted the payoff amount because they knew the value of the shares on that date and the number of shares due to wife.  But the fact that the parties could have used more efficient language doesn't mean that Option 2 is ambiguous or that the day of determination for that option is something other than May 1, 2011.

¶ 23    Similarly, wife contends that the parties would not have used the flexible term "day of determination" if they meant to fix Option 2's valuation date as May 1, 2011.  This argument, however, ignores that the day of determination for Option 1 or Option 3 may well be different than the day of determination for Option 2.[6]  And we aren't persuaded by wife's argument that it is "illogical" for Options 1 and 3 to have different days of determination than Option 2.  While we can't say exactly why the parties chose to value the shares as of May 1, 2011, for Option 2 while potentially valuing the shares as of a different date in Options 1 and 3, there is nothing

_____

[6] We need not — and do not — express any opinion about the day of determination for Option 1 or Option 3.

12

inherently illogical about choosing to apportion risks and benefits differently for different liquidation events.

¶ 24    For all these reasons, we conclude that the agreement unambiguously states that May 1, 2011, is the day of determination for Option 2.

## III.    Waiver of Evidentiary Hearing

¶ 25    Because we conclude that the contract is unambiguous, we need not address wife's contention that she was entitled to an evidentiary hearing to determine the parties' intent.  *USI Props. E., Inc. v. Simpson,* 938 P.2d 168, 173 (Colo. 1997) ("Extraneous evidence is only admissible to prove intent where there is an ambiguity in the terms of the contract.  Absent such ambiguity, we will not look beyond the four corners of the agreement in order to determine the meaning intended by the parties.") (citations omitted).

## IV.    Appellate Attorney Fees and Costs

¶ 26    Wife requests her appellate attorney fees under C.A.R. 39.1 and section 14-10-119, C.R.S. 2024, because of the disparity in the parties' finances.  Because the district court is in a better position than we are to make findings about the parties' financial circumstances, we direct the court to consider wife's appellate fee

request on remand based on the parties' relative financial circumstances at the time of the remand proceedings. *See* C.A.R. 39.1; *In re Marriage of Martin*, 2021 COA 101, ¶ 42.

¶ 27   Husband requests his appellate costs under C.A.R. 39. Because we affirm the judgment, husband is entitled to his costs. C.A.R. 39(a)(2).

## V.   Disposition

¶ 28   We affirm the judgment and remand the case to the district court to determine whether wife should receive her reasonable appellate attorney fees under section 14-10-119.

JUDGE FOX and JUDGE BERGER concur.