The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
April 25, 2019

## 2019COA60

## No. 18CA0321, *Shekarchian v. Maxx Auto* — Consumers — Colorado Consumer Protection Act — Deceptive Trade Practices — Damages

The plaintiff, a car owner whose car had been towed and impounded, brought a private action under the Colorado Consumer Protection Act (CCPA) against the towing company, alleging that the company's practice of requiring car owners to sign a release of claims before having an opportunity to inspect their vehicles constituted an unfair or deceptive trade practice.  The district court agreed, entered judgment for the plaintiff, and imposed treble damages against the towing company.

A division of the court of appeals first determines that the company's practice of refusing to release vehicles from the impound lot until car owners sign a release that contains false statements

concerning their ability to inspect their cars amounts to an unfair or deceptive trade practice under the CCPA. Next, the division concludes that the practice significantly impacts the public, as potential consumers, because hundreds of vehicle owners were subjected to the practice and the vehicle owners are parties to a financial and legal transaction with the towing company.

However, because the district court applied the incorrect legal standard in awarding treble damages, the division reverses and remands for further findings on damages.

Court of Appeals No. 18CA0321
City and County of Denver District Court No. 17CV30557
Honorable Elizabeth A. Starrs, Judge

Omid Shekarchian and Nationwide Telecom US Corp, a Colorado corporation,

Plaintiffs-Appellees,

v.

Maxx Auto Recovery, Inc.,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE HARRIS
Hawthorne and Fox, JJ., concur

Announced April 25, 2019

DLG Law Group LLC, Michael J. Davis, Cassandra S. Wich, Denver, Colorado,
for Plaintiffs-Appellees

Elkus & Sisson, P.C., Reid J. Elkus, Lucas Lorenz, Denver, Colorado, for
Defendant-Appellant

¶ 1     Defendant, Maxx Auto Recovery, Inc., appeals from a judgment entered in favor of plaintiffs, Omid Shekarchian and his company, Nationwide Telecom US Corp,[1] on their claim under the Colorado Consumer Protection Act (CCPA).

¶ 2     Maxx Auto runs a repossession service and impound lot.  It repossessed and impounded Shekarchian's car, then refused to return it unless Shekarchian agreed to sign a form release — before seeing the car — representing that he had "carefully examined" the car and had "made sure that there [was] no damage" and releasing Maxx Auto from any claims.  The district court found that Maxx Auto routinely required car owners to sign the release without an opportunity to inspect their vehicles and determined that the practice violated the CCPA.

¶ 3     On appeal, Maxx Auto contends that the district court clearly erred in finding that it had engaged in the challenged conduct, and that, even if it had, the conduct did not violate the CCPA. Furthermore, it says, the court applied an incorrect standard in

---

[1] Shekarchian and his company jointly owned the car in question. For ease of reference, we generally refer to the plaintiffs, in the singular, as Shekarchian.

determining that it had acted in bad faith and awarding treble damages.

¶ 4     We conclude that Maxx Auto's standard practice of demanding that car owners execute a release containing misrepresentations to avoid potential liability constitutes an unfair or deceptive trade practice under the CCPA and that the practice significantly impacted the public. But we agree with Maxx Auto that the court misapplied the standard of proof in awarding treble damages.

¶ 5     Accordingly, we reverse the damages award and remand for reconsideration under the proper standard. In all other respects, we affirm the judgment.

## I.     Background

¶ 6     Shekarchian bought the car under a retail installment agreement with BMW Financial Services (BMW FS). He later failed to make payments in accordance with the agreement, and BMW FS hired Maxx Auto to repossess the car. Maxx Auto towed the car to its secure impound lot.

¶ 7     About a month later, Shekarchian paid off the loan and BMW FS released its lien. But when Shekarchian appeared at the impound lot to recover his car, Maxx Auto refused to release it

2

unless Shekarchian signed a form release, prior to any inspection, representing that he had carefully inspected the car and its contents, agreeing that there was no damage, and releasing Maxx Auto from any claims:

> In sole consideration of the delivery to me of the above described vehicle and personal property, I agree that I have carefully examined the above described vehicle and made sure that there is no damage, other than any pre-existing damage marked and accounted for on the vehicle condition report.  I further agree that I have examined all personal belongings that were left in the above vehicle and that everything is accounted for and has no damage.
>
> By signing this Release, I fully understand the above statements and do agree to Release and Hold Harmless Maxx Auto Recovery . . . from all claims, demands and or actions, which I . . . may have against Maxx Auto Recovery . . . .

¶ 8    Shekarchian noted that the release contemplated a prior examination and asked to see his car, but Maxx Auto's employee refused to retrieve it until he obtained a signed release.  Eventually, Shekarchian left the lot without his car.

¶ 9    Shekarchian then filed this lawsuit, asserting, as relevant here, a claim under the CCPA and a claim for replevin.  After a

3

hearing on the replevin claim, the district court ordered Maxx Auto to return the car to Shekarchian. By that time, though, the car had been parked in the impound lot for more than seven months, and it needed repairs because of the protracted storage.

¶ 10    The case proceeded to a bench trial on Shekarchian's CCPA claim and Maxx Auto's counterclaim for additional storage fees. In a well-reasoned written order, the district court found that Maxx Auto routinely forced vehicle owners to "endorse a false statement on a release so that [it] could escape liability for harms it may have caused" its customers and that this practice was "plainly unfair and deceptive" within the meaning of the CCPA. The court entered judgment in favor of Shekarchian on his claim and Maxx Auto's counterclaim, awarded damages in the amount of the cost of repairs, and then trebled the damages upon a finding, "by a preponderance of the evidence," that Maxx Auto had engaged in bad faith conduct pursuant to section 6-1-113(2)(a)(III), C.R.S. 2018.

¶ 11    On appeal, Maxx Auto first argues that neither Shekarchian nor his company has standing to bring a CCPA claim. As for the merits, Maxx Auto contends that it did not engage in the conduct forming the basis of the court's finding of a CCPA violation, and

that, in any event, the conduct is not an unfair or deceptive trade practice that significantly impacts the public, as required by the CCPA. Maxx Auto also contends that the court erred in awarding treble damages.

## II. Standing Under the CCPA

¶ 12 At trial, Shekarchian testified that the cost of repairs to his car was paid by a nonparty company of which he was the owner. Maxx Auto contends that because a nonparty incurred the cost of repairs, neither Shekarchian nor Nationwide Telecom US Corp is the real party in interest under C.R.C.P. 17(a) and, therefore, neither plaintiff has standing to bring a CCPA claim. We disagree.

### A. Preservation and Standard of Review

¶ 13 Maxx Auto appears to conflate the real party in interest doctrine with the concept of standing. To the extent it presents an independent argument under Rule 17, we conclude that it has waived the argument, and so we address only its claim challenging plaintiffs' standing.

¶ 14 At trial, Shekarchian testified about the somewhat complicated ownership status of the car. Upon learning that the car was partly owned by a subsidiary of the named plaintiff

company, rather than the named company itself, Maxx Auto initially moved to dismiss on the grounds that "the proper party" had not been named and that Shekarchian did not have standing. But after further explanation by Shekarchian, Maxx Auto's counsel appeared to agree that the issue had been sufficiently clarified and resolved, prompting Shekarchian's counsel to ask, "[S]o is he withdrawing his motion to dismiss?" The court responded, "Well, I'm denying the motion to dismiss," to which Maxx Auto's counsel added, "Yeah. I – I think that ship has sailed. I – I think it's a little clearer."

¶ 15    We construe Maxx Auto's counsel's comments as a withdrawal of its claim that neither plaintiff was a "proper party." Therefore, Maxx Auto has waived review of that claim on appeal. *See, e.g.*, *Marriage of Corak*, 2014 COA 147, ¶ 23 ("A litigant who abandons an argument in the trial court likewise abandons it for the purposes of appeal."); *see also Ajay Sports, Inc. v. Casazza*, 1 P.3d 267, 272 (Colo. App. 2000) (party waives real party in interest claim if it fails to raise the claim "in a timely manner" in the district court).

¶ 16    Later, Shekarchian testified that a nonparty company had paid the cost of repairs. But this time, Maxx Auto argued only that,

6

as a consequence of the nonparty's payment, neither Shekarchian nor the named company had standing to pursue a claim under the CCPA. The court did not separately address standing in its written order, and, while we generally require a party to request a ruling in order to preserve an issue for appeal, *see Herrera v. Anderson*, 736 P.2d 416, 418 (Colo. App. 1987), the rule does not apply to a claim challenging standing, which may be raised at any time, *Anson v. Trujillo*, 56 P.3d 114, 117 (Colo. App. 2002).

¶ 17     Whether a plaintiff has standing to sue is a question of law that we review de novo. *Ainscough v. Owens*, 90 P.3d 851, 856 (Colo. 2004).

## B.     Analysis

¶ 18     The CCPA incorporates as elements of a claim the traditional standing requirements: an injury in fact to a legally protected interest. *See Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998).

¶ 19     In reviewing the elements of the claim, the district court found that Shekarchian had suffered injuries to a legally protected interest, as he was deprived of the use of his car for more than seven months and the car was damaged from being left in the impound lot. Maxx Auto says that because Shekarchian was able

to borrow a vehicle and another company paid the cost of repairs, Shekarchian did not suffer an injury in fact.

¶ 20     But the injury-in-fact inquiry turns on whether the plaintiff suffered an injury, not whether the injury caused the plaintiff to incur out-of-pocket losses. In *Hall*, for example, the supreme court concluded that "injury to property . . . lies squarely within the interests that the CCPA is intended to protect" and constitutes an injury in fact for standing purposes. 969 P.2d at 236. The court's conclusion did not depend on whether the landowners as opposed to a third party — an insurance company, for example — paid to repair the damaged fences and broken locks on their land; rather, it was sufficient that the plaintiffs had shown an injury to "property [or] property value." *Id.* at 237.

¶ 21     As a general matter, we are not ordinarily concerned, when it comes to determining a party's right to sue, with the precise financial arrangement under which the party has covered its losses. *Cf. Mullins v. Kessler*, 83 P.3d 1203, 1204-05 (Colo. App. 2003) (the defendant had the right to be reimbursed for costs of the litigation even though a third party may have covered those costs). That principle is particularly relevant in the context of a CCPA claim,

because the primary purpose of the statute is "not to make an injured party whole, but to punish wrongdoers for illegal acts." *May Dep't Stores Co. v. State ex rel. Woodard*, 863 P.2d 967, 972 (Colo. 1993); *see also Hall*, 969 P.2d at 231 ("[T]he CCPA serves more than a merely restitutionary function.").

¶ 22    Accordingly, we agree with the district court that Shekarchian suffered an injury in fact to a legally protected interest, and we conclude that plaintiffs had standing to sue under the CCPA.

### III.   CCPA Claim

#### A.    The District Court Did Not Err in Finding That Maxx Auto Violated the CCPA

¶ 23    The CCPA was enacted to regulate commercial activities and practices which, because of their nature, "may prove injurious, offensive, or dangerous to the public." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146 (Colo. 2003) (citation omitted).  The CCPA deters and punishes businesses that commit unfair or deceptive practices in their dealings with the

9

public by providing prompt, economical, and readily available remedies against consumer fraud. *Id.*[2]

¶ 24     To prevail on a CCPA claim, a plaintiff must prove that (1) the defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of the defendant's business, vocation, or occupation; (3) the practice significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) the plaintiff suffered an injury in fact to a legally protected interest; and (5) the challenged practice caused the plaintiff's injury. *Id.* at 146-47.

¶ 25     Maxx Auto challenges the district court's findings only with respect to the first and third elements of the claim.

1.     Unfair or Deceptive Trade Practice

¶ 26     Maxx Auto maintains that the court clearly erred in finding that it refused to return owners' vehicles unless they signed a release before they had an opportunity to inspect their vehicles. But, even if it did engage in such conduct, Maxx Auto argues, its

---

[2] The CCPA does not supplant or preempt other causes of action or remedies available to a plaintiff under the common law or other statutes. *See* § 6-1-105(3), C.R.S. 2018.

10

mere use of an exculpatory agreement "that is later held to be invalid" does not amount to an unfair or deceptive trade practice within the meaning of the CCPA. We are not persuaded.

### a. The Record Supports the Court's Factual Finding That Maxx Auto Engaged in the Challenged Conduct

¶ 27    The district court's determination that Maxx Auto had engaged in an unfair or deceptive trade practice by "forcing consumers to endorse a false statement on a release" was based on its factual finding that Maxx Auto required vehicle owners to sign the release "without being able to inspect the vehicle." Maxx Auto challenges that factual finding.

¶ 28    Where, as here, the district court acts as the factfinder, we defer to its credibility determinations and will not disturb its findings of fact unless they are clearly erroneous — that is, lack any support in the record. *Jehly v. Brown*, 2014 COA 39, ¶ 8.

¶ 29    The district court acknowledged that, in some circumstances — though not in Shekarchian's case — a Maxx Auto employee might move a vehicle to give the owner a cursory view of it. Still, the district court found that, despite the release's contemplation of a "careful examination," under no circumstances could owners

11

conduct a "meaningful inspection" of their vehicles before signing the release. This finding is supported by the record.

¶ 30    At trial, a Maxx Auto employee testified to the following:

- The impound lot is "completely secured." There are two fences, each with a gate, surrounding the lot. The first fence is a corrugated metal fence with barbed wire on top. A gate in that fence leads to a "middle section," and then to a second fence and gate that allows access to the inner lot. The second fence is a chain link fence, also with barbed wire on top.

- Vehicle owners are not permitted to enter the secured lot.

- At best, Maxx Auto will give the vehicle owner an opportunity to view his or her vehicle by pulling the car up "between the gates" so that the car is between the inner and outer fences.

- From that vantage point, the owner cannot "walk[] around the vehicle" or "do[] a close inspection" because the owner is separated from the car by the outer fence. The owner can only "see the outside of" the car, "see [that] it runs," and see that it is "intact."

- He did not offer to pull Shekarchian's car up to the inner fence. Instead, he asked Shekarchian to sign the release "prior to any inspection."

- Even though Shekarchian had signed a receipt and paid the $1000 in storage fees, Maxx Auto would not let him into the lot to inspect his car because he might have "driv[en] off" without signing the release.

- The lenders who contract with Maxx Auto are aware that it "ask[s] [the vehicle owner] to release the vehicle without a full inspection," but the lenders have "never had a problem with it."

- Maxx Auto's "standard operating procedure" is to require vehicle owners to sign the release "without having a full inspection."

¶ 31    We conclude that the evidence amply supports the court's finding that Maxx Auto requires vehicle owners to sign the release without giving them an opportunity to carefully examine the vehicle and its contents, contrary to the representations in the release itself. And, as a result, the court's conclusion that Maxx Auto

"force[d] consumers to endorse a false statement on a release" is likewise supported by the evidence.

b. Maxx Auto's Conduct Constitutes an Unfair or Deceptive Trade Practice

¶ 32    Next, Maxx Auto says that even if it required owners to sign the release without an opportunity to carefully examine their vehicles, that conduct does not amount to an unfair or deceptive trade practice under the CCPA.

¶ 33    While the occurrence of challenged conduct is a factual question on which we defer to the district court, whether the challenged conduct constitutes an unfair or deceptive trade practice is a question of law that we review de novo. *See S. Atl. Ltd. P'ship of Tenn., L.P. v. Riese*, 284 F.3d 518, 534 (4th Cir. 2002).

¶ 34    A business's conduct in making false representations about its services may constitute an unfair or deceptive trade practice. *See Rhino Linings*, 62 P.3d at 147-48. In the release, Maxx Auto represented that vehicle owners would have an opportunity to carefully examine their cars before releasing any claims for damages. But in practice, Maxx Auto refused to return the owners' vehicles unless they signed the release without examining their

14

cars.  The fact that owners eventually became aware of (and were forced to agree to) the false representations does not eliminate the underlying deception.  *See State ex rel. Coffman v. Castle Law Grp., LLC*, 2016 CO 54, ¶ 28 (the fact that the defendant disclosed its deceptively high prices to consumers did not render the prices fair and nondeceptive).

¶ 35    We are not persuaded by Maxx Auto's argument that because its conduct in forcing customers to sign the release is not expressly included in the statutory list of prohibited practices, the conduct cannot qualify as an unfair or deceptive trade practice.  As Maxx Auto concedes, the statutory list is not exhaustive.  *See Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47, 54 (Colo. 2001).  The CCPA does not — and could not — list "all, or even most, of the practices that the CCPA was intended to cover."  *Id.*

¶ 36    Nor are we convinced that characterizing Maxx Auto's conduct as an unfair or deceptive trade practice would impermissibly expand the scope of the CCPA.  Contrary to Maxx Auto's assertion, the conduct at issue is not merely "employing an exculpatory agreement that is later held to be invalid."  Rather, as we have described, Maxx Auto refused to return owners' cars unless the

owners agreed — prior to conducting a meaningful inspection — to sign a release representing that they had conducted a meaningful inspection and releasing Maxx Auto from all claims. A division of this court has determined that fraudulently inducing consumers to sign a release constitutes a deceptive trade practice. *See Dodds v. Frontier Chevrolet Sales & Serv., Inc.*, 676 P.2d 1237, 1238 (Colo. App. 1983). We therefore have no difficulty concluding that Maxx Auto's conduct falls squarely within the CCPA's broad prohibition on practices that are "injurious" or "offensive" to consumers. *Rhino Linings*, 62 P.3d at 146.

¶ 37 But even if we perceived the question as a close call, we would have to err on Shekarchian's side: the supreme court has directed that, "in determining whether conduct falls within the purview of the CCPA, it should ordinarily be assumed that the CCPA applies to the conduct." *Showpiece Homes*, 38 P.3d at 53.

¶ 38 We conclude, therefore, that Maxx Auto engaged in the challenged conduct and that the conduct amounts to an unfair or deceptive trade practice within the meaning of the CCPA.

## 2. Public Impact

16

¶ 39 To prove a violation of the CCPA, a plaintiff must show not only an unfair or deceptive trade practice, but also that the practice "significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property." *Hall*, 969 P.2d at 235. Thus, if a wrong is private in nature and does not affect the public, a claim is not actionable under the CCPA. *Rhino Linings*, 62 P.3d at 149.

¶ 40 Maxx Auto contends that its practice of forcing vehicle owners to sign the release as a condition of obtaining their vehicles did not impact the public as consumers because the lenders, not the vehicle owners, are the consumers of its repossession and impound services. And, Maxx Auto says, there was otherwise no evidence of a significant impact on the public. We disagree.

¶ 41 When the controlling facts are in dispute, as here, the existence or lack of public impact is a question of fact that we review under the clear error standard. *One Creative Place, LLC v. Jet Ctr. Partners, LLC*, 259 P.3d 1287, 1289 (Colo. App. 2011). Accordingly, we must accept the district court's public impact finding unless it is so clearly erroneous as to find no support in the record. *Id.* at 1290.

¶ 42    Some of the factors relevant to whether a challenged practice significantly impacts the public are the number of consumers directly affected by the challenged practice, the relative sophistication and bargaining power of the affected consumers, and evidence that the challenged practice has impacted other consumers or has a significant potential to do so in the future. *Martinez v. Lewis*, 969 P.2d 213, 222 (Colo. 1998). No single factor is determinative, *One Creative Place*, 259 P.3d at 1290, "nor is it necessary that all be present," *Rush v. Blackburn*, 361 P.3d 217, 228 (Wash. Ct. App. 2015) (citation omitted). Instead, the factors "represent indicia of an effect on public interest from which a trier of fact could reasonably find public interest impact." *Id.* (citation omitted).

¶ 43    We turn first to Maxx Auto's argument that the vehicle owners are not consumers of its services and therefore the challenged practice does not significantly impact the public as consumers. A case from Washington, a state that has consumer protection legislation similar to the CCPA, *see Hall*, 969 P.2d at 233-34 (recognizing the similarity in the states' legislation and relying on case law from Washington to interpret the CCPA), is instructive. In

*Rush*, a car owner sued a towing company under Washington's consumer protection statute. The towing company sought summary judgment, arguing — as Maxx Auto does here — that the plaintiff had failed to establish a public impact because the towing services were solicited not by the plaintiff but by a third party. 361 P.3d at 228. The court of appeals rejected that argument. It concluded that, by towing and impounding the plaintiff's car, the towing company had "in effect, forced [the plaintiff] into a consumer relationship" with it. *Id.* Once the towing company had possession of the car, the court reasoned, the plaintiff "had no choice but to interact with" the company. *Id.*

¶ 44 The same is true in this case. While the lender generally initiates repossession and impoundment services, every owner whose vehicle is towed to the secure impound lot becomes, as the district court aptly described it, an "unwitting customer" of Maxx Auto's services. The owner pays Maxx Auto to retrieve his or her vehicle and executes a series of releases for its benefit.

¶ 45 The parties' direct financial and legal relationship distinguish this case from *State ex rel. Weiser v. Castle Law Group, LLC*, 2019 COA 49, in which a division of this court concluded that the law

firm's deceptive practice did not have a significant impact on the public. In *Castle Law Group*, the trial court found that the law firm had engaged in a deceptive practice by failing to disclose certain information to two mortgage servicers, Fannie Mae and Freddie Mac, for which it had provided foreclosure services. *Id.* at ¶ 102.[3] The court also found that the deceptive practice significantly impacted the public because the two mortgage servicers are partially funded by taxpayers. *Id.* at ¶ 103.

¶ 46 On appeal, the division reversed the judgment against the law firm on the CCPA claim, concluding that the deceptive practice "directly affected" only the two mortgage servicers. *Id.* at ¶¶ 116-122. The division reasoned that the law firm made misrepresentations through retainer agreements to the mortgage servicers, not to members of the public, and therefore the public had not been "exposed to" the firm's CCPA violations and had not "undertake[n] other activities in reliance on the" violations. *Id.* at ¶ 124 (citing *May Dep't Stores Co.*, 863 P.2d at 973-74).

---

[3] Fannie Mae and Freddie Mac are the commonly used monikers for the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation.

¶ 47   In contrast, the impact to the vehicle owners from Maxx Auto's unfair trade practice is neither derivative nor attenuated. The vehicle owners pay storage fees directly to Maxx Auto and are parties to the coercive release agreement that constitutes the unfair trade practice. Thus, the vehicle owners are all "directly affected" by Maxx Auto's CCPA violations.

¶ 48   We turn next to the issue of whether Maxx Auto's practice has affected, or will affect, a sufficient number of consumers, and in the requisite manner, to establish a public impact.

¶ 49   The evidence showed that, at any given time, Maxx Auto has between 300 and 500 vehicles parked in its lot. And according to Maxx Auto's employee, the company's "standard operating procedure" is to refuse to return the owner's car unless he or she signs the release prior to an inspection of the vehicle. Thus, the evidence supported a reasonable inference that Maxx Auto engages in the unfair or deceptive practice in virtually every interaction with consumers. *See Crowe v. Tull*, 126 P.3d 196, 209 (Colo. 2006) (finding a public impact where lawyer advertising "potentially affects a large swath of the public").

21

¶ 50    And, as the district court found, those consumers have only "two options: take [it] or leave it." The inequality in bargaining power between a towing company and vehicle owners can prove particularly problematic. Many adults depend on their cars as their primary mode of transportation. *See Crane Towing, Inc. v. Gorton,* 570 P.2d 428, 433 (Wash. 1977). Thus, "[i]t cannot be doubted that the unexpected loss of the use of one's vehicle directly affects the safety and welfare of vehicle operators and owners." *Id.* at 434.

¶ 51    Given the relatively "coercive" nature of the relationship between towing companies and car owners, the owners are "likely more vulnerable to abuse." *Rush*, 361 P.3d at 228. Indeed, the evidence at trial showed that when Shekarchian balked at signing the release before inspecting his car, the Maxx Auto employee told him that, even if he stayed at the lot "all day," he would not get his car unless he signed the release — "end of story."

¶ 52    Still, Maxx Auto contends that there is a relevant "distinction between something happening to a consumer, and whether that has any impact on the consumer." Relying on *Hildebrand v. New Vista Homes II, LLC*, 252 P.3d 1159 (Colo. App. 2010), Maxx Auto appears to argue that Shekarchian failed to prove that the challenged

practice adversely affected other vehicle owners, who might simply have signed the releases with no qualms.

¶ 53   In *Hildebrand*, after shifting soils caused their basement flooring to fail, the owners of a home sued the builder under the CCPA, asserting that the builder had misrepresented information about soil composition and various flooring options.  *Id.* at 1167-68. A division of this court concluded that the homeowners had failed to establish that the builder's misrepresentations impacted the public because, although other homes were constructed similarly, the plaintiffs did not present any evidence that the basement flooring in other homes had failed or was likely to fail, or that the same misrepresentations had been made to other homeowners, or that the parties had unequal bargaining power.  *Id.* at 1169-70.

¶ 54   *Hildebrand* does not support Maxx Auto's position.  The problem in *Hildebrand* was the absence of evidence of any exposure to, or an adverse effect from, the builder's misrepresentations with respect to anyone other than the plaintiffs.  But here, the vehicle owners are necessarily exposed to the challenged practice — as a routine matter, owners must sign the false release in order to recover their vehicles — and the adverse effect is inherent in the

release itself — the owners must release claims against Maxx Auto without knowing whether they have any claims. We therefore reject the argument that the challenged practice did not affect other consumers.

¶ 55    Accordingly, because the district court's public impact finding is supported by the record, we will not disturb it on appeal.

¶ 56    In sum, then, we conclude that the district court did not err in finding that Maxx Auto engaged in an unfair or deceptive trade practice that significantly impacted the public, in violation of the CCPA.

### B.    The District Court Applied the Wrong Standard in Awarding Treble Damages

¶ 57    A private plaintiff who prevails on his CCPA claim is entitled to damages in the amount of his actual loss or, if greater, $500. § 6-1-113(2)(a)(I)-(II). But, "if it is established by clear and convincing evidence that [the defendant] engaged in bad faith conduct," the court must award the plaintiff three times the amount of actual damages sustained. § 6-1-113(2)(a)(III). "Bad faith conduct" means "fraudulent, willful, knowing, or intentional conduct that causes injury." § 6-1-113(2.3).

24

¶ 58    The court made the following finding with respect to bad faith conduct:

> The Court also finds that Plaintiffs proved by a preponderance of the evidence this business practice was conducted by Defendant in bad faith. Maxx Auto conducted this practice when it knew that it was forcing customers to sign a document saying they had inspected their vehicle, without actually giving them a chance to do so.

¶ 59    Maxx Auto asserts, Shekarchian acknowledges, and we agree that the district court applied an incorrect standard of proof in determining that Maxx Auto had engaged in bad faith conduct.

¶ 60    Shekarchian urges us to disregard the error, while Maxx Auto asks that we either reverse the judgment because the district court applied the incorrect standard of proof or make a factual finding, based on a defense never presented to the district court, that it did not act in bad faith. We decline to take any of these approaches.

¶ 61    Instead, because we cannot say with certainty whether the district court would have found bad faith conduct under the clear and convincing standard of proof, we must reverse the damages award and remand to the district court for reconsideration of treble damages under the proper standard. *See People v. Shifrin*, 2014

COA 14, ¶¶ 134-35 (where district court applied the wrong standard in ruling on a motion for directed verdict on a CCPA claim, appellate court would not decide, in the first instance, the discretionary issue of whether motion should have been denied, but instead remanded for district court to consider motion under proper standard).

## IV. Conclusion

¶ 62 The treble damages award is reversed, and the case is remanded to the district court for reconsideration, on the existing record, of treble damages under the proper standard. In all other respects, the judgment is affirmed.[4]

JUDGE HAWTHORNE and JUDGE FOX concur.

---

[4] Maxx Auto says that if we reverse the judgment in favor of Shekarchian on the CCPA claim, "[t]his will necessitate vacating the District Court's judgment as to the unjust enrichment claim." But because we have affirmed the judgment with respect to the CCPA claim, we do not address the unjust enrichment claim.