23CA2002 Velgersdyk v Thompson Crossing 10-03-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA2002
Larimer County District Court No. 22CV30584
Honorable Stephen J. Jouard, Judge

Michael Velgersdyk and Amanda Velgersdyk,

Plaintiffs-Appellants,

v.

Thompson Crossing II Association,

Defendant-Appellee.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE FOX
Johnson and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 3, 2024

March & Olive, LLC, Stewart W. Olive, Fort Collins, Colorado; Poudre Legal Advisors LLC, Daniel L. Sapienza, Fort Collins, Colorado, for Plaintiffs-Appellants

Sutton Booker P.C., Joel S. Babcock, Matthew Cecil, Denver, Colorado, for Defendant-Appellee

¶ 1    Plaintiffs, Michael and Amanda Velgersdyk, appeal portions of the district court's judgment in favor of defendants, Dylan Trembley and Voranan V. Karbacka, and defendant-appellee, Thompson Crossing II Association (the HOA).[1]  We affirm the judgment of the district court.

## I.    Background

¶ 2    This appeal arises out of a dispute in Johnstown, Colorado, between the Velgersdyks, their neighbors Trembley and Karbacka, and their HOA, over water drainage onto the Velgersdyks' property. In the Velgersdyks' complaint, they allege that Trembley altered the grading and drainage pattern of his backyard and relocated the drainage point for his sump pump, causing significantly more water to enter the Velgersdyks' property.

¶ 3    The Velgersdyks also alleged the HOA overwatered and failed to maintain a grassy swale in the subdivision behind the Velgersdyks' and Trembley and Karbacka's property, Outlot B, which increased groundwater on the property.  Finally, they alleged that the HOA failed to enforce portions of the contract between the

---

[1] Trembley and Karbacka did not file an answer brief.

HOA and homeowners — the "Declaration of Covenants, Conditions, Restrictions, and Easements" (the Declaration) — prohibiting alterations to grading and drainage on homeowners' properties.

¶ 4 In August 2022, the Velgersdyks sued Trembley and Karbacka for negligence and trespass/nuisance for the alleged grading alterations and sump pump drainage issues, and for breach of contract for Trembley and Karbacka's alleged violations of the Declaration, requesting damages and a permanent injunction. The Velgersdyks also sued the HOA for negligence and trespass/nuisance for overwatering Outlot B and for breach of the Declaration, requesting damages and a permanent injunction. The district court held a three-day bench trial.

¶ 5 To start, there was conflicting testimony about the amount of water present in Outlot B. At trial, a landscaping company manager the HOA had contracted with since 2017, Joseph Potkanowicz, testified that Outlot B is located directly behind both the Velgersdyks' and Trembley and Karbacka's properties.

¶ 6 Outlot B is a greenway area running between two sets of homes that created a "natural drainage swale" — a shallow grassy ditch — that collected water to direct it to a nearby street.

Potkanowicz testified that he was aware of several complaints in 2017 and 2018 about standing water in Outlot B, which resulted in temporarily halting irrigation to the area. Potkanowicz testified that by 2019, once the grass and landscaping in Outlot B became more established, the issue was resolved. According to Potkanowicz, he never saw evidence of water leaving Outlot B onto any resident's property.

¶ 7 Michael Velgersdyk testified, however, that the area was often "mushy" and standing water was consistently present. Conversely, Dylan Trembley testified that Outlot B had not had standing water issues since 2018. Michael Velgersdyk conceded that after the HOA reduced its watering of Outlot B, his sump pump ran "about 50% less" than before. A defense expert, James Whipple, testified that the Velgersdyks' sump pump likely ran so often because their home was too close to the groundwater table below.

¶ 8 There was also conflicting testimony about the alleged changes to Trembley and Karbacka's grading. The district court asked Michael Velgersdyk what specific changes he believed occurred to Trembley and Karbacka's grading, and Velgersdyk said he believed Trembley "flattened" his yard, which caused "probably 75%" of the

3

water that entered Trembley and Karbacka's backyard to flow directly onto his property, rather than draining to the properties on each side of Trembley and Karbacka's yard equally. Dylan Trembley testified that he never altered the grade or drainage on his property, however, save for relocating his sump pump drainpipe to the lot line with the Velgersdyks.

¶ 9 The Velgersdyks' expert Dennis Messner — admitted as "an expert in civil engineering with expertise related to grading, drainage and groundwater issues" — testified that the biggest change he could see to Trembley and Karbacka's property that might affect its drainage patterns was the placement of rocks that created a path for water to drain onto the Velgersdyks' property. The rocks also created a rock berm facing Outlot B that would direct water into the Velgersdyks' property. But Messner could not tell if Trembley and Karbacka's yard had been flattened or raised and noted, when examining the property's original "spot elevation exhibit," that "the flow adjacent to the patio is fairly consistent with what was [there] originally." Whipple testified that, based on his observation of the property, the grading on Trembley and Karbacka's property had not been changed.

4

¶ 10    As for the relocation of Trembley and Karbacka's sump pump drainage, the Velgersdyks introduced several photos indicating that a sump pump drainpipe at their shared fence line was draining a significant amount of water onto their property. Mitigating this additional water from the sump pump drain required building a trench and installing a new drainage system.

¶ 11    Dylan Trembley testified that he never told the HOA about moving his sump pump drainpipe, requested approval to do so, or spoke with Kellison Corp. (Kellison), the HOA's property management company, about the matter. Jeremy Woods, an HOA manager with Kellison, testified that he was never told about the repositioning of Trembley and Karbacka's sump pump drain. An HOA board member who lived across the street from the Velgersdyks testified that he regularly saw water on the sidewalk outside the Velgersdyks' house, and knew it was from a sump pump, but he did not specify whether he was aware that Trembley had relocated his drainage pipe.

¶ 12    After trial concluded, the district court issued its findings of fact and conclusions of law. The court found that the Velgersdyks had failed to prove by a preponderance of the evidence that the

HOA's overwatering of Outlot B had contributed to the increase in groundwater under their property. As to the alleged regrading of Trembley and Karbacka's property, the court found that the Velgersdyks had failed to prove by a preponderance of the evidence that Trembley's landscaping had altered drainage patterns on his property. However, the court found that the sump pump drain relocation caused the Velgersdyks damages because it required the installation of the new drainage system, resulting in $6,185.66 of costs — though the evidence did not show the HOA was aware of Trembley's actions.

¶ 13 The court next reached three conclusions of law. First, as to the negligence claims against the HOA and Trembley and Karbacka, it concluded that the Velgersdyks failed to prove that the HOA breached a duty to maintain Outlot B, but that Trembley and Karbacka committed negligence and breached a legal duty that caused damages by relocating their sump pump drainage. Second, for trespass and nuisance, the court ruled that the Velgersdyks failed to prove that the HOA's actions constituted a nuisance or trespass that caused any damages, but it ruled that the Velgersdyks established the claim for trespass and nuisance against

Trembley and Karbacka for their sump pump relocation. And third, for the breach of contract claims the court decided that the Velgersdyks failed to prove that the HOA breached the Declaration by overwatering Outlot B and, because it was not informed of Trembley and Karbacka's sump pump drain relocation, the HOA did not permit a nuisance. The court also found that Trembley and Karbacka had not altered the grading or drainage on their property and had not breached the Declaration.

¶ 14     As a result, the court entered judgment in favor of the HOA and Trembley and Karbacka for every claim, save for the negligence, trespass, and nuisance claims against Trembley and Karbacka for relocating the sump pump drain, and ordered Trembley and Karbacka to pay the Velgersdyks $6,185.66 in damages. The district court declined to order injunctive relief.

¶ 15     The Velgersdyks and the HOA moved to recover attorney fees and costs, with the Velgersdyks requesting $11,623.97 and the HOA requesting $80,893.11 ($59,388.50 in attorney fees and $21,594.61 in costs). The district court found that some of the HOA's requested attorney fees were not reasonably necessary for the disposition of the case and excluded them (and some costs).

But because the HOA's requested attorney fees were reasonable overall and the Velgersdyks' claims were "essentially based upon the same set of operative facts to establish liability" and could not be apportioned, it granted the HOA $56,674.99 in attorney fees and $19,299.19 in costs for a total award of $75,974.18. The district court denied the Velgersdyks' request. The Velgersdyks filed this appeal.

## II.    Issues Raised on Appeal

¶ 16    On appeal the Velgersdyks raise three issues, arguing that the district court erred by (1) failing to address whether Trembley and Karbacka had breached the Declaration by creating a nuisance and finding that they had not breached the Declaration prohibiting drainage pattern alterations despite having relocated their sump pump drain; (2) excluding, for lack of foundation, a stamped drone survey report relied upon by the Velgersdyks' expert; and (3) failing to find the HOA liable for breach of the Declaration for not remedying a nuisance on the grounds that the HOA did not know about the sump pump drainage relocation. Alternatively, the Velgersdyks argue that the district court erred by awarding the HOA attorney fees and costs without apportioning the fees by claim.

8

### III. Analysis

#### A. Breach of Contract Claims

¶ 17    The Velgersdyks first argue that the district court erred by not finding that Trembley and Karbacka breached the Declaration by maintaining a nuisance and altering their property's drainage patterns. The Velgersdyks contend that because the district court found that Trembley and Karbacka had committed a trespass or nuisance by relocating the sump pump drainage, Trembley and Karbacka necessarily violated Declaration section 8.23's prohibition on maintaining nuisances and that the district court erred by not addressing this issue. The Velgersdyks also argue that the district court interpreted Declaration section 8.24's prohibition on grading and drainage alterations too narrowly in finding that Trembley and Karbacka had not committed a breach because they had not modified "the topography or contour of any drainage area in completing [their] landscape plan."

¶ 18    The HOA, in turn, contends that the Velgersdyks did not preserve the issue of whether Trembley and Karbacka breached section 8.23 because the Velgersdyks did not raise it in their complaint or their proposed findings of fact and conclusions of law.

As to section 8.24, the HOA argues that the district court's factual findings have record support and merit deference, and regardless, the HOA did not breach the Declaration.

### 1. Section 8.23

¶ 19 The Declaration's prohibition of nuisances in section 8.23 provides:

> No obnoxious or offensive activity shall be carried on upon any Lot or the Common Area, nor shall anything be done thereon which may be, or may become, an annoyance or nuisance to any other Owner. Nothing contained herein shall be construed as prohibiting or restricting construction activities by Declarant at any time, seven (7) days per week.

¶ 20 To start, the Velgersdyks did not sufficiently raise the argument that Trembley and Karbacka breached section 8.23 with the district court; thus, this issue is unpreserved. *See Gebert v. Sears, Roebuck & Co.*, 2023 COA 107, ¶ 25. The complaint only references section 8.23 in the "facts and allegations" section, noting "Section 8.23 of the Declaration provides that no owner may do anything on their property which may be, or may become, an annoyance or nuisance to any other owner." But the Velgersdyks' breach of contract claim against Trembley and Karbacka only

mentions section 8.24 and alleges that Trembley "breached the terms of the Declaration by altering the grading and drainage areas of [the] property without first obtaining permission from the Design Review Committee of the Association."  And in the Velgersdyks' proposed and rebuttal findings of fact and conclusions of law, submitted after trial, section 8.23 is never mentioned in connection with the breach of contract claims.  Oddly, section 8.23 is mentioned in the Velgersdyks' trial brief on breach of contract but section 8.24 is not.[2]  But again, the trial brief does no more than paraphrase section 8.23 without alleging that Trembley and Karbacka breached that provision.

¶ 21    The district court was aware of section 8.23 and the Velgersdyks cited it intermittently, but section 8.23 was not offered as a ground for the Velgersdyks' breach of contract claims in the two critical documents — the complaint and proposed findings of fact and conclusions of law — while section 8.24 was.  Thus, the district court was not fully presented with the sum and substance

---

[2] The stipulated facts of the Velgersdyks' proposed trial management orders quote section 8.24 in its entirety but repeat the same language concerning section 8.23 from the complaint.

11

of the Velgersdyks' argument under section 8.23, and we may not address this argument for the first time on appeal. *See Gebert*, ¶ 25.

¶ 22    Even had this issue been preserved, however, any error would have been harmless because the outcome would have been the same regardless. *See* C.R.C.P. 61. The district court had already awarded the Velgersdyks $6,185.66 in damages to compensate them for the trespass or nuisance and the costs of installing a new drainage system after Trembley relocated the sump pump drain.

¶ 23    "The measure of damages in a breach of contract action is the amount it takes to place the plaintiff in the position it would have occupied had the breach not occurred." *Technics, LLC v. Acoustic Mktg. Rsch. Inc.*, 179 P.3d 123, 126 (Colo. App. 2007), *aff'd*, 198 P.3d 96 (Colo. 2008). Even assuming a breach did occur, the damages awarded on the other claims placed the Velgersdyks in the same position they would have been in had the breach not occurred, and they may not receive duplicative damages for Trembley's actions. *See Schuessler v. Wolter*, 2012 COA 86, ¶ 63 ("A plaintiff generally may not receive a double recovery for the

same wrong."). Thus, any presumed error in this matter — even if preserved — would be harmless.

### 2. Section 8.24

¶ 24    The district court found that Trembley and Karbacka did not breach section 8.24, titled "Drainage and Irrigation," because they did not alter the "topography or contour of any drainage area" on their property. The Velgersdyks contend that by relocating the sump pump drainage, however, Trembley modified the "drainage pattern" on Trembley and Karbacka's land, and that the Declaration, when read as a whole, implies that section 8.24 prohibits more than topographical changes.

¶ 25    Section 8.24 provides:

> No Owner shall modify or change the topography or contour of any drainage areas or easements, including swales, constructed on the Lots and other portions of the Property from the shape and outline established by the Declarant or Persons or entities acting on behalf of the Declarant; provided, however, than [sic] an Owner shall be permitted to modify the drainage areas on his or her Lot upon receiving written approval therefore from the DRC. Any Owner who in any way materially modifies the drainage pattern on the land without such consent shall be subject to sanctions contained herein for violations of this Declaration.

The Velgersdyks contend the final sentence — along with the Declaration's general purpose — prohibits actions like moving a sump pump drain.

¶ 26    We review covenants and recorded instruments de novo and interpret them in their entirety, not by looking at particular clauses in isolation, in an effort to ensure that all provisions are given effect and none are rendered meaningless. *FD Ints., LLC v. Fairways at Buffalo Run Homeowners Ass'n*, 2019 COA 148, ¶ 23. We will enforce recorded instruments as they are written and give their words and phrases their common meanings if the instrument is clear, with any ambiguities strictly construed against the drafter. *Id.*

¶ 27    We agree with the district court that section 8.24 concerns modifications of topography and the contours of the land, and does not encompass actions like relocating a sump pump drain. The first sentence of section 8.24 clearly details what it prohibits — modifications or changes to the "topography or contour of any drainage areas or easements, including swales, constructed on the Lots and other portions of the Property." It then provides an exception in the latter half of the sentence (if a homeowner gets

14

written approval to make such a change), and then in the final sentence it details that, unless an owner obtains this approval, an owner is subject to sanctions.

¶ 28    The final sentence does not change or expand the scope of section 8.24. Its reference to a "drainage pattern" is merely a catchall for the prohibited topographical changes explicitly mentioned in the first sentence. This is further evidenced by the final sentence's reference to the consent exception in the prior sentence. It would be illogical for the final sentence to, in effect, add a new type of prohibited action different to or broader than what the prior sentence detailed while still referencing the same consent exception from the prior sentence. *See EnCana Oil & Gas (USA), Inc. v. Miller*, 2017 COA 112, ¶ 28 (contracts must not be interpreted in a manner that leads to an absurd result); *see also Ringquist v. Wall Custom Homes, LLC*, 176 P.3d 846, 849 (Colo. App. 2007) (contracts must be given effect as written, unless they are voidable or "the result would be an absurdity").

¶ 29    The plain and common meaning of the terms in section 8.24 supports the interpretation that section 8.24 is concerned with topographical changes only, and such an interpretation does not

15

undermine the general purpose of the Declaration or render any other provision meaningless. *See FD Ints.*, ¶ 23. Indeed, this interpretation helps give effect to the broader scope of section 8.23 and its prohibition on nuisances generally.

¶ 30    Therefore, the district court did not err by finding that Trembley did not violate section 8.24 by moving the sump pump drain, because that section exclusively concerns topographical and contour changes. *See id.*

## B.    Exclusion of the Drone Survey

¶ 31    Next, the Velgersdyks argue that the district court erred by excluding, for lack of foundation, a "stamped" land survey of Trembley and Karbacka's property taken via drone from evidence.

### 1.    Additional Background

¶ 32    The Velgersdyks sought to introduce the drone survey because their expert, Messner, relied on it in trial preparation to compare Trembley and Karbacka's current property with the grading records and to detect changes. The HOA objected, arguing that the report lacked foundation and was hearsay.

¶ 33    While counsel tried to lay additional foundation, Messner testified that he did not conduct the survey himself. Instead, he

requested the drone survey because he was unable to provide surveyors access to Trembley and Karbacka's property. Messner did not observe the survey being conducted, did not know more about drone surveys than a "normal person," had not worked with drone surveys personally, and was unfamiliar with the software used by the surveyor.

¶ 34 The Velgersdyks chiefly argued that the survey should be admitted as it was prepared by a land surveyor at the direction of a professional engineer (Messner), while the HOA argued that the report lacked reliability. The HOA noted that "[w]e've seen no indication that it is reliable in this case. No testimony to margin of error. No testimony to the type of drone used." The district court sustained the objection and refused to admit the drone survey.

¶ 35 The next day the Velgersdyks asked the court to reconsider, arguing that the drone report was a "stamped and certified survey" by a certified land surveyor. Thus, the Velgersdyks argued, CRE 703 and two cases (a Colorado Court of Appeals case and the Colorado Supreme Court case that overruled it on other grounds) — *Hamilton Enterprises, Ltd. v. South Park Land & Livestock Co.*, 527 P.2d 886, 889 (Colo. App. 1974), and *South Park Land & Livestock*

*Co. v. Hamilton Enterprises, Ltd.*, 538 P.2d 444 (Colo. 1975) —
supported its admission. The district court reiterated that "the
basis of [the court's] ruling was that there was not a foundation
that the survey was reasonably reliable from the witness." The
Velgersdyks attempted to lay more foundation, with Messner
testifying that it was common for civil engineers to rely on stamped
land surveys as the stamp indicates reliability. The HOA renewed
its objection, noting that simply because a survey was stamped did
not render it admissible. The court again refused to admit the
drone survey.

### 2. CRE 703 and the Stamped Survey

¶ 36 "Under CRE 402, all relevant evidence is admissible, except as
provided by constitution, rule, or statute, and irrelevant evidence is
not admissible." *People v. Ramirez*, 155 P.3d 371, 378 (Colo. 2007).
And while relevant evidence is broadly admissible, "CRE 702 and
CRE 403 temper that broad admissibility by giving courts discretion
to exclude expert testimony if it is unreliable, [or] irrelevant." *Id.*
And a district court may exclude evidence if "its probative value is
substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury, or by considerations

of undue delay, waste of time, or needless presentation of cumulative evidence."  CRE 403.

¶ 37     "We review a trial court's determination of the admissibility of evidence, including expert testimony, for an abuse of discretion and review its application of a legal standard de novo."  *Bocian v. Owners Ins. Co.*, 2020 COA 98, ¶ 63.  The district court is granted broad discretion over the admissibility of expert testimony, and we will not overturn its decision unless it was "manifestly erroneous."  *Id.* at ¶ 64; *see also People v. Huehn*, 53 P.3d 733, 736 (Colo. App. 2002) ("Whether a proper foundation has been established is a matter within the sound discretion of the trial court, whose decision will not be disturbed absent a clear abuse of that discretion.").

¶ 38     "Under CRE 703, experts may testify as to facts and data that are not otherwise admissible in evidence if the facts and data formed the basis of the expert's opinion and are of the type reasonably relied upon by experts in the field."  *People in Interest of M.M.*, 215 P.3d 1237, 1250 (Colo. App. 2009); *see also Quintana v. City of Westminster*, 56 P.3d 1193, 1199 (Colo. App. 2002).  "CRE 703 does not permit otherwise inadmissible facts or data to be presented to the [fact finder] merely because the expert relied on

them. . . . [I]f the facts and data are admitted, they are admissible only to explain the witness's opinion, not for the truth of the matter asserted." *People v. Vigil*, 2024 COA 72, ¶ 18.

¶ 39 The district court excluded the drone survey because it lacked adequate foundation and the HOA challenged its reliability. As a result, because "the underlying basis for the expert opinions and recommendations [was] not accepted as reliable by the court[], the expert's testimony itself [was] inadmissible." *M.M.*, 215 P.3d at 1250.

¶ 40 "When determining whether expert testimony is reliable, the trial court 'should apply a liberal standard that only requires proof that the underlying scientific principles are reasonably reliable.' In doing so, the court must consider the totality of the circumstances and is not confined to any specific list of factors." *Bocian*, ¶ 66 (quoting *Kutzly v. People*, 2019 CO 55, ¶ 12).

¶ 41 Here, the Velgersdyks' primary argument for the reliability of the drone survey report was that it was a "stamped and certified survey" prepared by a land surveyor. The Velgersdyks primarily point to *South Park Land*, 538 P.2d 444, as support for the proposition that a certified survey is inherently reliable. There, the

20

Colorado Supreme Court addressed the propriety of a discharged land surveying company's revocation of its certification for all survey work completed in a project, along with its filing of a mechanic's lien on the remaining unpaid contract balance, once it found out that some of the survey work had been modified. *Id.* at 444-45. The supreme court held that the revocation was an improper remedy given that the statutory regime already provided penalties for wrongful alterations of survey work. *Id.* at 445. In reaching this conclusion, the supreme court noted that "[s]urveyors are licensed to protect the public from unqualified work. The required seal certifies expertise. It also acknowledges the surveyor's responsibility to protect the public for any mistakes or negligence in the survey which bears the seal." *Id.* (citations omitted). The statutory regime governing land surveyors in sections 12-120-301 through -316, C.R.S. 2024, does not undermine these propositions.

¶ 42      But *South Park Land* never specifically addressed whether land surveys were inherently reliable for purposes of CRE 702 and 703. Had the Velgersdyks brought the survey's creator, Michael J. Dedecker, to lay a proper foundation, the district court's ruling might well have been different. But the Velgersdyks only called

Messner, who testified that it was common for civil engineers to rely on stamped land surveys and could not specify if there were any differing practices for traditional surveys and aerial surveys. Messner also testified that he (1) had not observed the survey being conducted; (2) was no more familiar with drone surveys than a lay person; and (3) had not "worked with" drone surveys personally. As a result, Messner could not speak to the reliability of the drone survey or the methodology behind its preparation.

¶ 43    The record supports the district court's determination that there was insufficient foundation to admit the drone survey. Accordingly, we cannot say that the district court's decision was manifestly erroneous. *See Bocian*, ¶ 63.

### C.    HOA Breach of Contract Claim

¶ 44    The Velgersdyks next argue that the district court erred by failing to find that the HOA breached the Declaration by not enforcing section 8.23 and allowing Trembley and Karbacka to maintain a nuisance when they moved their sump pump drainage. The district court found that the HOA "was not informed of the decision by Defendants Trembley and Karbacka to move their sump pump discharge, did not authorize the same, and [the HOA] did not

breach the terms of the Declaration by permitting a nuisance under Section 8.23 of the Declaration." The Velgersdyks contend that there is "substantial evidence," however, that the HOA knew about the drainage relocation and failed to act — though their contentions lack citations to specific parts of the record for support. *See* C.A.R. 28(a)(7)(B) (an appellant's brief must include citations to the parts of the record on which the appellant relies).

¶ 45 We review the district court's factual determination that the HOA did not know of the nuisance for clear error and must defer to it unless it has no support in the record. *Shekarchian v. Maxx Auto Recovery, Inc.*, 2019 COA 60, ¶ 28 ("Where, as here, the district court acts as the factfinder, we defer to its credibility determinations and will not disturb its findings of fact unless they are clearly erroneous — that is, lack any support in the record."). It is not our role to reweigh conflicting evidence. *See IBC Denver II, LLC v. City of Wheat Ridge*, 183 P.3d 714, 719 (Colo. App. 2008).

¶ 46 The record supports the finding that the HOA was unaware that Trembley relocated his sump pump drain. He testified that he never told the HOA about moving his sump pump drainpipe, did not request approval, and did not notify Kellison about the change.

23

Woods (an HOA manager with Kellison) testified that he was never told about Trembley and Karbacka's sump pump drain being relocated. And the HOA board member across the street never specified that he knew the water on the street in front of the Velgersdyks' house was the result of Trembley and Karbacka's drain relocation.

¶ 47 Because there is support in the record for the district court's findings, it did not clearly err. *See Shekarchian,* ¶ 28.

### D. Attorney Fees and Costs

¶ 48 The Velgersdyks' last contention is that the district court erred by failing to apportion its attorney fees award by distinguishing between their breach of contract claims and tort claims. The HOA, in turn, requests appellate attorney fees and costs.

¶ 49 "[W]e review a court's award of costs for an abuse of discretion. But we review the district court's legal conclusions forming the basis for that decision de novo." *Far Horizons Farm, LLC v. Flying Dutchman Condo. Ass'n,* 2023 COA 99, ¶ 34 (citation omitted).

¶ 50 It is well established that "under the American Rule, absent a statutory or contract provision providing for the recovery of attorney

fees, each party is responsible for paying their own attorneys."
*Mulberry Frontage Metro. Dist. v. Sunstate Equip. Co.*, 2023 COA 66,
¶ 27. The district court found that section 38-33.3-123(1)(c), C.R.S.
2023,[3] of the Colorado Common Interest Ownership Act (CCIOA)
permitted awarding the HOA attorney fees and costs. That statute
provides: "In any civil action to enforce or defend the provisions of
this article or of the declaration, bylaws, articles, or rules and
regulations, the court shall award reasonable attorney fees, costs,
and costs of collection to the prevailing party."[4]

¶ 51    At the district court, and on appeal,[5] the Velgersdyks contend
that the district court erred by not apportioning the HOA's

---

[3] Effective August 7, 2024, section 38-33.3-123(1)(c), C.R.S. 2024, was amended to add subsections (1)(c)(I) and (1)(c)(II), which substantially limit an award of attorney fees for an association unless the property owner's breach of a covenant or bylaws was the result of a willful failure to comply. *See* Ch. 422, sec. 1, § 38-33.3-123, 2024 Colo. Sess. Laws 2881.

[4] A division of this court noted in *Far Horizons Farm, LLC v. Flying Dutchman Condominium Ass'n* that its interpretation of section 38-33.3-123(1)(c), C.R.S. 2023 — that the district court is required to determine who is the prevailing party as a whole and not on a claim-by-claim basis — did not necessarily mean that the statute allowed for fee awards unrelated to CCIOA claims, but left the issue unresolved. *See* 2023 COA 99, ¶¶ 28-29.

[5] The Velgersdyks do not mention "block billing" in their opening brief on appeal, but their apportionment argument is consistent with this argument at the district court.

requested fees by claim and that the HOA engaged in "block billing" by lumping together its time spent on claims that are not recoverable under CCIOA along with recoverable claims. The district court found that the "separate claims asserted by Plaintiffs were essentially based upon the same set of operative facts to establish liability. . . . [Thus] the claims were substantially interrelated, dependent upon the same nexus of operative facts, and . . . an apportionment of fees is not required or appropriate."

¶ 52    Block billing is not prohibited in Colorado, but district courts have "discretion to reduce the hours billed based on block billing if the court is unable to determine whether the amount of time spent on various tasks was reasonable." *Payan v. Nash Finch Co.*, 2012 COA 135M, ¶ 29. The Colorado Supreme Court and divisions of this court have favorably looked to *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983), for issues involving fees and claim apportionment. *See Rocky Mountain Festivals, Inc. v. Parsons Corp.*, 242 P.3d 1067, 1073 (Colo. 2010); *Ravenstar LLC v. One Ski Hill Place LLC*, 2016 COA 11, ¶ 49, *aff'd*, 2017 CO 83; *Payan*, ¶ 34.

> In *Hensley*, the United States Supreme Court
> considered whether an award of attorneys' fees
> under a fee-shifting statute could be levied

when the plaintiff was successful in some claims and not in others. The Court determined that, where a plaintiff had brought multiple claims "involv[ing] a common core of facts" or "based on related legal theories," counsel's efforts on an individual claim could not be distinguished from work on the whole of the litigation, and thus a reduction in the fee award for work done on unsuccessful claims would be inappropriate. On the other hand, where the plaintiff presented "distinctly different claims for relief that [were] based on different facts and legal theories," the litigation could be justly conceived as a "series of discrete claims" that had been "raised in separate lawsuits," and so a fee award that contemplated only those claims on which the plaintiff had succeeded was both practicable and necessary to affect the purpose of the fee-shifting statute.

*Rocky Mountain Festivals*, 242 P.3d at 1073 (citing and quoting *Hensley*, 461 U.S. at 434-35).

¶ 53 Under the *Hensley* approach, where a fee-shifting statute — here CCIOA — allows for attorney fees for some claims but not others, attorney fees need not be apportioned among the claims if all of the claims revolve around a common core of facts or related legal theories to the extent they cannot reasonably be separated. *See Rocky Mountain Festivals*, 242 P.3d at 1073-74. The fact finder is in the best position to make this determination, as "whether

27

claims are interrelated or segregable is inherently sensitive to the facts of both the case at bar and those of the underlying dispute." *Id.* at 1074.

¶ 54     Here, the Velgersdyks' claims against the HOA were for (1) negligence for failing to maintain Outlot B properly and prevent excess drainage; (2) trespass and nuisance for failing to prevent drainage from Outlot B onto the property; (3) breach of contract for failing to maintain Outlot B and failing to prevent Trembley and Karbacka's drainage and grading modifications; and (4) injunctive relief.  These claims all surround a common core of operative facts and boil down to two key issues — what was the source of the alleged extra water entering the Velgersdyks' property, and who was responsible?  The factual research the HOA undertook to defend against the Velgersdyks' tort, breach of contract, and injunctive relief claims relating to Outlot B and Trembley and Karbacka's drainage substantially overlapped.  It was reasonable for the district court to determine that work on each individual claim was indistinguishable from the others and the whole of the litigation. *See id.* at 1073-74.

¶ 55    The record supports the district court's conclusion that the Velgersdyks' "claims were substantially interrelated, dependent upon the same nexus of operative facts."  Thus, it did not abuse its discretion by declining to reduce the HOA's attorney fees despite the HOA not apportioning its requested fees by claim.  *See Far Horizons Farm*, ¶ 34; *see also Payan*, ¶ 29.

¶ 56    Finally, the HOA requests appellate attorney fees pursuant to section 38-33.3-123(1)(c), C.R.S. 2023, C.A.R. 39(a)(2), and C.A.R. 39.1.[6]  *See Far Horizons Farm*, ¶ 39 (the prevailing party as a whole may recover reasonable appellate attorney fees and costs incurred in litigating claims arising under CCIOA).  Because we affirm the district court's judgment, the HOA is the prevailing party on appeal and it is entitled to appellate attorney fees.  *See* C.A.R. 39(a)(2); § 38-33.3-123(1)(c), C.R.S. 2023.  We exercise our discretion pursuant to C.A.R. 39.1 and remand the case to the district court to

---

[6] Because the amendments to section 38-33.3-123(1)(c) apply to "debts accrued on or after the applicable effective date of this act" on August 7, 2024, the amendments do not apply to any attorney fees the HOA accrued before August 7, 2024.  Sec. 9, 2024 Colo. Sess. Laws at 2887.

determine an award of reasonable appellate attorney fees in addition to its award of attorney fees and costs incurred below.

## IV. Disposition

¶ 57 The district court's judgment is affirmed, and we remand the case so the district court may determine an award of appellate attorney fees in accordance with this opinion.

JUDGE JOHNSON and JUDGE SCHOCK concur.